Weygandt, C. J.
 

 Although there is little conflict in the evidence, the plaintiff requested the trial court to state in writing the conclusions of fact found separately from the conclusions of law. These are as follows:
 

 “Findings of Fact
 

 “The court finds: 1. That on July 16, 1946, a default judgment for $30,000 was rendered in favor of the plaintiff against Walter Reynolds for injuries and damage sustained October 11, 1944, when plaintiff was struck by a truck operated by Walter Reynolds.
 

 “2. That said truck was the property of Bernard Straus and that Buckeye Union Casualty Company had issued a policy of insurance to Bernard Straus which policy contained an omnibus clause as follows:
 

 ‘The unqualified word “insured” wherever used in coverages A and B and in other parts of this policy, when applicable to such coverages, includes the named insured, and, except where specifically stated to the contrary, also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured. * * *’
 

 
 *149
 
 “3. That prior to October 11, 1944, Reynolds had been working for Lncas Trucking Company and as employee for Lucas had done some hauling for Bernard Straus, a furniture dealer at 1202 Main street, Cincinnati, Ohio, operating under the name of ‘Main street Carpet and Furniture Go.’;
 

 “4. That on October 11, 1944, Reynolds was employed by Straus to haul some furniture in Straus’ truck;
 

 ‘ ‘ 5. That the truck was kept on a parking lot on Walnut street about one block from Straus’ store and Straus gave a note to Reynolds authorizing the release of the truck to Reynolds;
 

 “6. That Reynolds obtained the truck and one Viola Mallot to assist him and made the delivery for Straus.
 

 “7. That on their return Straus paid Reynolds and Mallot for their services and that Reynolds then purchased a baby bed from Straus;
 

 “8. That at about 3:00 o’clock p. m. Reynolds asked permission to use the truck to take said bed to the home of Viola Mallot a distance of about a block and a half from Straus’ store;
 

 “9. That Straus granted permission to make this delivery and instructed Reynolds to take the truck to the parking lot on Walnut street immediately after delivering the baby bed ;
 

 “10. That gasoline rationing was in effect and Straus was led to grant the permission because of the short distance of the Mallot home from the Straus store and the parking lot;
 

 “11. That at 8:00 o’clock p. m. that day the truck, operated by Reynold's, with Viola Mallot as a passenger struck and injured plaintiff at 14th
 
 &
 
 Elm streets;
 

 “12. That Reynolds at that time was engaged entirely on an errand of his own and that his use of the truck at the time of the accident was in violation of the
 
 *150
 
 specific instruction of Straus to return the truck to the parking lot upon delivery of the baby bed.
 

 “13. That Reynolds use of the truck was not with the permission of Straus.
 

 “Conclusions of Law
 

 ‘ ‘ The court finds as a matter of law: .
 

 ‘ ‘ 1. That whether permission to use a vehicle, under the omnibus clause in an insurance policy is granted, is a question of fact;
 

 “2. That the acts of Reynolds were a violation of Section 12619, General Code of Ohio, in that he was operating without the owners’ consent;
 

 ‘ ‘ 3. That judgment be rendered for defendant Buckeye Union Casualty Company.”
 

 The plaintiff’s first contention is that he is entitled to recover by reason of the language of paragraph III of the policy. It is captioned “Definition of ‘Insured’ ” and the material part is set forth in the trial court’s conclusions of fact and law quoted above. Reduced to its lowest terms, it provides that “the unqualified word ‘insured’ wherever used * # # also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the
 
 actual use
 
 of the automobile is with the permission of the named insured. * * *” (Italics supplied.)
 

 The plaintiff points to the conceded fact that Reynolds obtained express permission from the insured owner, Straus, to use the motor truck. This fact, the plaintiff insists, is sufficient to include Reynolds within the terms of the policy. The defendant casualty company contends that the single fact of original permission is not enough to meet the requirement of the policy that the “actual use” of the motor vehicle must be with the permission of the named insured. Emphasis is placed on the additional undisputed fact that at the time of the collision the use to which Rey
 
 *151
 
 nolds was then putting the truck was wholly without the permission of Straus, the insured owner. According to the findings of fact, “Reynolds at that time was engaged entirely on an errand of his own and * * * his use of the truck at the time of the accident was in violation of the specific instruction of Straus to return the truck to the parking lot upon delivery of the baby bed.” It was 3:00 o’clock in the afternoon when Reynolds obtained Straus’ permission to use the truck to deliver a baby bed to the home of Viola Mallot, a block and a half distant from Straus’ store. It was not until 8:00 o’clock that evening — five hours later— that the collision occurred in a different part of the city.
 

 In 5 American Jurisprudence, beginning on page 804, appears the following comment with reference to automobile liability insurance policies containing provisions similar to those here involved:
 

 “Independently of the general insuring clause in an automobile liability policy, oftentimes there appears, either within the policy or by way of rider or indorsement attached thereto, a clause purporting, or the effect of which is, to extend the protection of the policy to any person or persons coming within a defined group. This is the so-called ‘omnibus’ clause. # * #
 

 “Most omnibus coverage clauses indemnify others than the insured only where such other persons are riding in or operating the insured automobile with the ‘permission’ or ‘consent’ of the assured. * * *
 

 “The view taken by some courts is, broadly stated, that for the use or operation of the car to be with the ‘permission,’ or ‘consent,’ of the named assured, etc., within the meaning and effect of an omnibus clause, permission or consent must have been given, impliedly at least, not only to the taking and use of the car in the first instance, but also to the particular use being
 
 *152
 
 made of the car at the time in question. Other courts take the view that for one’s use or operation of the car to be with the ‘permission’ of the named assured, etc., within the meaning and effect of an omnibus clause, he need have received only permission or authority to take and use the car in the first instance.”
 

 The latter is designated the extreme view. Extensive annotations are to be found in 72 A. L. R., 1375, and 106 A. L. R., 1251.
 

 A similar comment appears in 45 Corpus Juris Secundum, 898, Section 829:
 

 “Express permission for a given purpose does not imply permission for all purposes; but a general permission may sufficiently cover a particular trip, without specific permission therefor. Permission, in order to extend the protection of the policy, has been held by some authorities to mean a consent to use the car at a time or place, or for a purpose, authorized by insured, so that a different use is not within such protection. Under other authority, however, permission to use the car in the first instance is permission within the omnibus clause, regardless of the use to which the car is actually put thereafter, so that insurer is liable even if the accident occurs while the car is being used in a manner not embraced within the limits of the permission given, or even in a manner which violates an express prohibition by insured. * * * The difference between the two views has been said to resolve itself largely into the question whether the word ‘permission’ is to be construed as meaning permission to use a car or as permission to use the car in a specified manner and for a specified purpose.”
 

 But most of the cases cited thereunder, like most of those upon which the plaintiff relies, involve merely the word “use” and not the newer phrase “actual use ’ ’ employed in the instant case.
 

 
 *153
 
 In 45 Corpus Juris Secundum, 902, Section 829, appears the following further comment:
 

 “Where the policy covers ‘actual use’ by another with the owner’s permission, the term ‘actual use’ has been said to mean the use to which the automobile is being put at the time of the accident with the permission of the named insured, and to mean the use of the car at the time under consideration * *
 

 This represents the newer and the majority rule.
 

 The decision on which the plaintiff places special reliance is in the case of
 
 Dickinson, Admr.,
 
 v.
 
 Maryland Casualty Co.,
 
 101 Conn., 369, 125 A., 866, 41 A. L. R., 500. However, the policy involved in that case did not contain the phrase “actual use.” Furthermore, the decision was not unanimous, and in a later decision in the case of
 
 Mycek
 
 v.
 
 Hartford Accident & Indemnity Co.,
 
 128 Conn., 140, 20 A. (2d), 735, that court limited the effect of the
 
 Dickinson case
 
 by the following comment on a quotation from the earlier opinion:
 

 “This quotation shows that the case was regarded as one where permission for a specific use had been given but there had been a slight deviation, not of sufficient importance to annul the permission.. Many of the cases citing the
 
 Dickinson case
 
 have distinguished it on that ground * *
 

 Then, referring to the later case, the court said:
 

 “Under these circumstances the plaintiff, by the great weight of authority, is denied recovery. It is held that liability under an omnibus coverage clause of this character is not established when the use made of the car constitutes a complete departure from that for which permission was granted.”
 

 That the departure in the instant case, as in the later Connecticut case, was complete is beyond cavil when it is remembered that Reynolds borrowed the truck for his own errand of a few minutes to make a delivery of a bed a distance of a block and a half but still had the
 
 *154
 
 truck five hours later in a different part of the city on a wholly different mission.
 

 The lower courts were correct in declining to follow the extreme, minority rule which obviously lends itself to gross abuse by an unscrupulous individual who, in violation of his express instructions, might retain possession of the automobile indefinitely and operate it over unlimited territory with the insurance still in effect. If such extreme unlimited coverage is to be afforded, it would seem that in fairness to all concerned it should be so stated in the policy.
 

 The second ground on which the plaintiff bases his claim for recovery is the so-called financial responsibility law to which reference is made in “condition” number 7 of the policy reading in part as follows:
 

 “Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. ’ ’
 

 The Ohio statutes on this subject are Section 6298-1
 
 et seq.,
 
 General Code, of which Section 6298-7 contains the following pertinent language:
 

 “ ‘Motor vehicle liability policy,’ as used in this act, shall mean a policy of liability insurance issued by
 
 an
 
 insurance company or carrier authorized to issue policies of insurance of the kind and nature set forth in this act under the laws of this state, or the state in which the insured resides, to the person therein named as insured, which policy shall either (1) designate, by explicit description or other adequate reference, all
 
 *155
 
 motor vehicles with respect to which coverage is intended to be granted by said policy, and shall insure the insured named therein and any other person using or responsible for the use of any such motor vehicle
 
 with the consent,
 
 express or implied,
 
 of such insured,
 
 against loss from the liability imposed by law upon such insured dr upon such other person for injury to or death of any person * * (Italics supplied.)
 

 The defendant contends that this and the cognate sections of the statutes are not applicable under the facts in the instant case and can become operative only when a conviction or a failure to satisfy a judgment has been certified to the Registrar of Motor Vehicles of the state of Ohio. There is no such circumstance here.
 

 But, irrespective of whether these provisions are applicable, the question is moot, since the statute provides, as does the policy, that the use of the motor vehicle must be with the consent or permission of the insured. Here it is not contended that Reynolds had the permission of the insured to make use of the truck at the time or place or for the purpose for which he was using it when the collision occurred. The plaintiff relies on the original consent to use the truck at a different time and place and for a different purpose. As previously observed, this is not sufficient under the majority rule.
 

 The decisions of the lower courts were not erroneous, and hence the judgment of the Court of Appeals must be affirmed.
 

 Judgment affirmed.
 

 Hart, Zimmerman, Stewart and Turner, JJ., concur.
 

 Taft, J., concurs in paragraph one of the syllabus and in the judgment.
 

 Matthias, J., dissents.