Stewart, J.
The main question for determination is whether under the particular facts of this case, all the testimony having been produced by plaintiff, McNamara was an additional insured under the terms of the liability insurance policy.
The salient facts are as follows:
The H. F. Hammon Development Company, of Florida, a fiduciary organization, was the owner of several automobiles including the one involved in the present case. This latter automobile was the subject of an insurance policy issued by the Employers’ Liability Assurance Corporation, Ltd., and the company was the named insured.
One Wallace A. Eobinson, according to his testimony, was a trustee, part owner and comanager of the company and for a period of time had consistently used one or another of its automobiles for personal business and pleasure, apparently as a permittee of the named insured. It was his general practice as such permittee to allow his wife to make use of such of the company’s cars as he used, which of course made her the permittee of a permittee.
During the spring of 1938, Mr. and Mrs. Eobinson drove to Cleveland in the company car involved in the present case. They had formerly lived in that city and Mrs. Eobinson had relatives there. Eobinson pro *190 ceeded to New York on personal business and left the automobile in the custody of Mrs. Robinson in Cleveland for her use.
On the evening of June 11, 1938, Mrs. Robinson and McNamara, her nephew, who was about 21 or 22 years of age, attended a picnic at a location known as the European Gardens. They arrived at the Gardens about five o’clock in the afternoon, drank with other companions for several hours, and both became visibly affected.
Olga Linden, whose family owned and operated the European Gardens and with whom McNamara was staying on the day of the injury to plaintiff, testified that she thought both McNamara and his aunt acted as though intoxicated. She testified further that McNamara at times drank quite a bit and had been in other automobile accidents.
Mrs. Robinson, whose testimony was introduced by deposition, proved to be a witness with a poor memory. She said she remembered little or nothing about the matters concerning which she was questioned but this may have been due, in part at least, to the fact that a period of about 12 years had elapsed between the date of West’s injuries and the taking of the deposition.
The following answers to questions asked her are typical :
“Q. Had you driven to Cleveland from Florida? You don’t recall? A. No.
“Q. You do recall the incident in which Paul was involved in an accident, you say? A. Yes.
“Q. Whose car were you driving at that time? A. Whatever car we had up there, I suppose.
“Q. That’s right, whatever car you had in Cleveland at that time? A. Yes.
“Q. Do you recall whether or not it was a Buick automobile?
*191 < < * * *
“A. I don’t know.
“Q. You don’t know. Where were you when you first received word of this accident? A. I don’t remember. I wouldn’t know.
“Q. Had you been with Paul that evening?
C l * * *
“Q. On the evening of the accident, June 11, 1938.
ii* * *
“A. Yes.
“Q. And do you remember where? A. No, I don’t.
“Q. And do you recall whether or not it was at a picnic?
í i * * *
“A. No, I don’t remember.
“Q. Well, do you recall the circumstances under which Paul was driving the automobile that evening?
A. No.
( < * * *
“Q. Do you recall where you were staying or living in Cleveland at the time this .incident took place? A. No, I don’t.
“Q. Well, I will ask you whether or not it is a fact, Mrs. Robinson, that you turned the keys to the car over to Paul that evening? A. I don’t remember.
i ( * * *
“Q. You wouldn’t say it.wasn’t true, would you? A. I don’t remember a thing about the case.
“Q. And do you recall having a conversation with Paul as to where he was to go with the car and what he was to do? A. No, no, sir.”
Jacob Loeffler, one of plaintiff’s witnesses, testified that he was with McNamara and Mrs. Robinson at the European Gardens and that Mrs. Robinson said to McNamara, “Would you take the car and go and get me some cigarettes? I am out of cigarettes.” Loeffler testified further that a few minutes after that *192 conversation, which occurred around eight-thirty or nine o’clock in the evening, McNamara left with a young man called “Mop Top” and walked up the hill toward the car.
The accident in which plaintiff was injured happened some five or six miles away, and there is no testimony with reference to any of McNamara’s actions or to where he had gone or been between the time he left the European Gardens and the time of the accident. Neither McNamara nor any of the persons involved in the accident were called as witnesses.
We now consider the relevant parts of the liability insurance policy involved.
Paragraph III, under the heading, “Insuring Agreement,” provides:
“Definition of ‘assured.’ The unqualified word ‘assured’ wherever used in coverages A and B and in other parts of this policy, when applicable to these coverages, includes not only the named assured but also any person while using the automobile and any person or organization legally responsible for the use thereof, provided that the declared and actual use of the automobile is ‘pleasure and business’ or ‘commercial,’ each as defined herein, and provided further that the actual use is with the permission of the named assured. * * *” (Compare Section 6298-7, General Code, 116 Ohio Laws, 218, 221.)
In item VI of the policy, it is indicated by an “X” that the automobile is to be used for “pleasure and business” as defined in condition 2, which provides:
“Purposes of use defined, (a) The term ‘pleasure and business’ is defined as personal, pleasure, family and business use.”
As can well be imagined, there is a conflict in the cases with respect to the meaning and scope of language in an automobile liability insurance policy which *193 extends coverage to one who is actually using the automobile “with the permission of the named insured.”
Naturally the facts in each case are of great importance and in many instances a decision depends on the particular facts developed in the particular case.
The question with which we are here concerned is discussed in an annotation appearing in 160 A. L. R., 1195, and captioned “Omnibus clause of automobile liability policy as covering accidents caused by third person who is using car with consent of permittee of named insured.” At page 1206, the annotator comments :
“It is submitted that as a generalization from all the cases within the scope of this annotation, the following rules may be stated as expressing the basis of the holdings in the great majority of the decisions:
“1. The original permittee who has been given permission to use the automobile can delegate this authority to the second permittee so as to bring the use of the automobile by this person within the protection of the policy if permission has been expressly given by the named insured to make such delegation.
“2. The original permittee who has been given permission to use the automobile but has been expressly forbidden to delegate this authority cannot do so, and the use of the car by the second permittee in violation of the named insured’s express order is not within the protection of the policy.
“3. The original permittee who has been given permission to use the car can not, according to the great weight of authority, delegate this authority to the second permittee so as to bring the use of the car by that person within the protection of the policy where the initial permission is silent as to the question of delegation of authority.
*194 “4. The initial permission given by the named assured to the original permittee includes, according to the better view, the use of the automobile by the,second permittee where in doing so the second permittee serves some purpose, benefit, or advantage of the first permittee. This is the case if the original permittee is riding in the car * * * or if the car is driven in his interest or for a purpose mutual to him and the second permittee * * *.”
In the present case, Mr. Robinson was the first permittee, Mrs. Robinson was the second permittee, and McNamara, who was driving the car at the time of the accident, without either Mr. or Mrs. Robinson in the car, was at best a permittee of a permittee of a permittee. Certainly, McNamara was not driving the car for any purpose mutual to the named insured or the first permittee. There is no claim that the alleged mission on which McNamara had gone was in any manner in the interest of the owner of the car or of Mr. Robinson who was in New York at the time of the accident.
There is a great difference between the facts in the present case and those in Brown v. Kennedy, supra, upon which the Court of Appeals relied.
In the Brown ease, the “named insured” in the liability insurance policy was "W, E. Kennedy. His daughter, Dorothy Kennedy, was attending Wilmington College, at Wilmington, Ohio, and she had the permission of her father, who was the representative of the liability insurance company, to use his automobile in making journeys between her home at Hamersville in Brown county and Wilmington. During one of those trips, Bennett White, also a student at Wilmington College, who frequently rode with Dorothy Kennedy, was driving the automobile and caused injury to one Brown. Brown instituted an action for dam *195 ages against Dorothy Kennedy and Bennett White and obtained a judgment against both of them. Thereafter Brown filed a supplemental petition under Section 9510-4, General Code, against the casualty company, the insurer of W. E. Kennedy, to subject the insurance money provided by the policy to the payment of the judgment.
The Court of Common Pleas entered judgment against Brown, the Court of Appeals reversed the judgment, and the Supreme Court affirmed the judgment of the Court of Appeals.
Judge Turner, writing the opinion in the case in this court, remarked:
“The insurer did not choose to limit its liability to one who operates or drives the automobile but selected a wider term and agreed to insure anyone who used the car with permission.
“The fact that Bennett White was driving the car without the knowledge or consent of the named insured does not change the fact that Dorothy was using the automobile at the time of the accident for the purpose of transportation between her home and Wilmington College. * * * Had the evidence disclosed that Bennett White was driving alone on some mission of his own, a different situation would be presented. The only question here is whether Dorothy Kennedy was using the automobile with permission of her father, the named insured. That question was settled by the trial court’s finding of fact.
“We agree with the Court of Appeals that the words ‘using,’ ‘used,’ and ‘actual use’ do not have the limited meaning of ‘operating,’ ‘operated,’ or ‘actual operation.’ The defense that Bennett White was driving does not negative that fact that Dorothy Kennedy was using the automobile.”
Judge Turner in his opinion twice stressed the fact *196 that Brown, in his action against the insurer, was not trying to collect the judgment against White, the driver of the automobile, but was trying to collect the judgment against Dorothy Kennedy, who had permission from her father, the owner and named insured, to use the automobile and who was in it and using it at the time of the accident.
As Judge Turner said:
“As was pointed out by the Court of Appeals, the instant action against the insurer is not to collect the judgment against the driver of the vehicle, White.
í i * * #
“Under the findings óf fact by the trial court and the terms of the policy Dorothy Kennedy was an insured under the policy and it is the duty of the insurance company under its contract to respond. The insurance company is not being held liable for the use of the car by Bennett White * *
In the present case, West brought an action against McNamara alone and recovered a judgment against him. Moreover, Mrs. Robinson was not riding in the automobile when West was injured and it is a matter of mere conjecture as to what McNamara was doing with the car at the time of the accident 5 or 6 miles from the European Gardens.
It could well be that the trial judge, as the trier of the facts, and whose province it was to pass upon the credibility of the witnesses, determined that McNamara, at the time of the accident, was not on an errand for Mrs. Robinson.
This court has held that where an automobile liability insurance policy contains the language, “provided the actual use of the automobile is with the permission of the named insured,” it means that the use to which the vehicle is being put at the time of the accident must be with permission of the named in *197 sured. (Gulla v. Reynolds, 151 Ohio St., 147, 85 N. E. [2d], 116.)
It would seem logically to follow that the actual use of the automobile must be with the permission of the named insured.- That was the situation in the Brown v. Kennedy case, supra.
In the present case, there is not the remotest showing that the H. F. Hammon Development Company, the named insured, ever gave permission to McNamara to use the automobile in question or ever knew that he had driven or would drive it. It is-not likely that it was within the contemplation of the named insured that the permittee of its permittee would authorize the driving of the car by a person who was intoxicated, drank heavily at times, and had been in other accidents. Particularly would this be so in reference to the driving of the car without either the original permittee or his permittee being present therein and having no direction or control over its operation. As a matter of fact, after the accident in which West was injured, McNamara was brought into court and found guilty of the charge of “reckless driving.”
In our opinion, the rule which should be applied here and which was followed by the trial court is that the permittee of a permittee of the named insured, in the absence of express or implied authority of such named insured, can not effectively permit a fourth person to operate the vehicle so as 'to bring such person within the protection of the policy.
The universal rule that insurance policies are to be construed strictly in favor of the insured operates in favor of such insured persons as are covered by the policy, and, in a case such as the present one, is not applicable to extend the coverage of the policy to absurd lengths so as to provide a right of action under Section 9510-4, General Code.
*198 The judgment of the Court of Appeals is reversed and that of the Court of Common Pleas affirmed.

Judgment reversed.

Weygandt, C. J., Middeeton, Taut, Matthias and Hart, JJ., concur.