LARCAMP, PLAINTIFF, *v.* BADGLEY ET, DEFENDANTS.

Municipal Court, Columbus.

No. 128320.  Decided June 29, 1962.

*Messrs. Volkema, Wolske & Bopeley,* for plaintiff.
*Messrs. Power, Griffith & Jones,* for defendants.

TROOP, J.  This case is on for decision having been submitted on the motion of defendant, Beacon Mutual, for dismissal of plaintiff's petition and judgment made at the close of plaintiff's case and renewed at the close of all of the evidence.

It was stipulated, by and between the parties, that plaintiff's Exhibit I is a true copy of Policy No. GL 6368 issued by Beacon Mutual to Winders Chevrolet Company and which was in force at the time of the incident involved in our case.  It was further stipulated that title to the 1953 Plymouth was transferred from John O. Persinger to Winders Chevrolet on Febru-

ary 28, 1961 and from Winders to Kar Brokers on March 14, 1961, by proper certificates of title.

The court finds the following operative facts, chronologically appearing, as follows:

2-24-61—John O. Persinger traded in a 1953 Plymouth automobile to Winders Chevrolet.

2-24-61—Kar Brokers, Inc. signed an order of purchase for the 1953 Plymouth and Oscar Badgely picked up the car at the Winder's lot for Mr. Conrad of Kar Brokers, who brought him to the lot, all with the permission of Winders.

2-27-61—Kar Brokers paid $50.00 for the Plymouth.

2-28-61—Transfer of title to the Plymouth from John O. Persinger to Winders Chevrolet Co.

3- 3-61—Badgely, apparently the operator of the 1953 Plymouth, was involved in an accident with plaintiff, Larcamp.

3-14-61—Transfer of title to the Plymouth from Winders Chevrolet to Kar Brokers.

10-18-61—Judgment was entered in favor of the plaintiff, Orrin D. Larcamp, against defendant, Oscar L. Badgley, in the sum of $2405.00 and costs, Badgley being in default of answer and appearance. (In the same entry Paul F. Conrad was dismissed from the action as a party-defendant.) Demand was made upon defendant, Beacon Mutual, to pay this judgment and defendant has failed to pay, the judgment remaining unsatisfied.

There appears to be very little dispute as to these facts, except as to the matter of permission.

Further, the court finds that a sales operation such as we have here includes, as incidental and necessary thereto, the delivery and acceptance of an automobile by a purchaser for his uses and purposes, and that such is within the scope of the hazards set out in Division 1 of the garage liability policy stipulated herein. And still further, the court finds that the purchaser, Kar Brokers, was using the automobile with the permission of Winders Chevrolet and was, therefore, an "insured" under the terms of the policy.

Aside from the determination of facts as to the comprehension of the terms "hazards" and "insured" as contained in the policy of insurance, the troublesome problem relates to the applicable law. Defendant, in its trial brief, seeks to build its defense on the ground that sole control and possession of the Plymouth had been transferred to Kar Brokers and that it was not shown to be operated in connection with the operation of the business of Winders. Defendant relies upon *Kane* v. *Employers Liability Assurance Corp.*, 79 Ohio Law Abs., 111, to support this defense. Citing *Gulla* v. *Reynolds*, 151 Ohio St., 147, defendant further contends that plaintiff has no liability since "the actual use of the automobile at the time of the accident was not with the permission of the named insured."

· This court is of the considered opinion that the case of *Brewer* v. *DeCant*, 167 Ohio St., 411, is controlling in the instant case. The *DeCant case* has essentially the same fact pattern as our case. A garage liability policy of insurance was involved which policy was practically identical in terms to the one presently considered. The *DeCant case* was decided April 2, 1958, and appears to be the law now.

It should be noted that the federal court case, upon which defendant relies, was decided February 19, 1958, before the *DeCant case* was decided. The federal court in the *Kane case* based its decision upon what it decided was the law of Ohio after considering the *Garlick*, *Mielke* and *Workman cases* decided by the Ohio Supreme Court. Today, we must assume, the *DeCant case* would be respected as the law of Ohio.

The development of the rule of law is clear. *Workman* v. *Ins. Co.*, 144 Ohio St., 37, decided August 2, 1944, involved a garage liability policy. The rule of law announced was as follows:

"does not insure against liability for injuries resulting from an accident whch occurred after such automobile, with complete possession and control, has been delivered to the purchaser thereof, although a certificate of title thereto had not been issued to the purchaser at the time of such accident."

The court noted that the purchaser signed a note and chattel mortgage, signed an application to secure the transfer of title, and had redelivered the application to the seller to get the

transfer completed within three days. By these acts the purchaser had an enforceable right to a certificate of title. The court specifically did not decide whether legal title had passed.

The decision in *Mielke* v. *Leeberson*, 150 Ohio St., 528, does not provide much help in our problem. The court held that in the trial court there was some evidence of ownership of the automobile, but added, "such evidence can never be sufficient without the production of a certificate of title." But the court simply remanded the case for a new trial upon the ground that the evidence of ownership was not sufficient to support a judgment.

In *Garlick* v. *McFarland*, 159 Ohio St., 539, the court in its discussion of the facts moves in the direction of the *Kelly Car case* and approves the pronouncements of the court in the *Mielke case*. The court decided, however, essentially technical matters, and at page 549, the decision reads as follows:

"The definition of 'owner' as used in the insurance policy was a question of law for the court, * * *. The determination of the question of permissive use was a question of fact for the jury."

The court said further that the instructions of the trial court were without prejudice as to the insurance company when that issue of fact was submitted. The judgment of the Court of Appeals was held to be in error when it said that the causes should not have been submitted to the jury; consequently, the Supreme Court reversed the Court of Appeals and affirmed the judgment of the Common Pleas Court.

It remains for the *DeCant case* to provide a clear cut, unequivocal rule with respect to ownership of an automobile. Toward the close of the opinion the rule is set out as follows:

"The line between ownership and non-ownership of an automobile must be finely drawn. This court in its most recent decisions, in interpreting Section 4505.04, Revised Code, has drawn that line at the issuance of a certificate of title. Until such time as a certificate of title is issued to a purchaser, no title to the automobile passes to him."

No certificate of title had been issued to DeCant. And rather significantly, the court says of the seller (comparable to Winders in our case), "until such time as it saw fit to have a

certificate issued to DeCant, the automobile was being used by DeCant with its permission."

A look at *Gulla* v. *Reynolds*, 151 Ohio St., 147, is necessary because of Beacon's argument in its trial brief. The *DeCant case* was decided in 1958, the *Gulla case* in 1949. The court made no reference whatever in its decision in the *DeCant case* to the *Gulla decision*. It would appear that the court did not consider the two cases as related. The broad generalization and rule set out in Syllabus 1 would seem to govern our case, but a closer reading of the decision reveals some clear cut distinctions between the two. The *Gulla case* does not involve a garage liability policy and the problem of transfer of ownership is not involved, and consequently no attention is directed to the matter of permssion to use an automobile pending the delivery of a certificate of title.

In the *Gulla case*, the court frequently uses the term "permission," but the term "authorization" more clearly depicts the meaning intended and the rule announced then falls nicely into our basic rules concerning the scope of the authority of the employee or servant. Straus, the owner and insured, gave permission to his employee or servant, Reynolds, to take a baby bed to Viola's home, a block and a half distant, and directed Reynolds to then return the truck to the parking lot. Some five hours later, Reynolds then on an errand of his own and in violation of his specific instructions injured the plaintiff, Gulla, in an accident. Reynolds being on a frolic of his own acted outside the scope of his authority, or "the actual use" at time of the accident was not such as that for which he had permission, if you prefer.

The court, at page 154, says by way of support for its conclusion, as follows:

"If such extreme unlimited coverage is to be afforded, it would seem that in fairness to all concerned it should be so stated in the policy."

To all concerned, it would appear to this court, includes the innocent victim, who has not had a chance to read the policy before he picks his offending driver, as well as the issuing company and the insured, who is the one who controls the use of his automobile and who should be charged with the determining that those to whom he entrusts his equipment are reliable.

Be that as it may, the *Gulla case* is reconcilable with the *DeCant case*, which affords the rule in the instant case.

Since the Plymouth in question was covered by the definition of hazard in the policy and was being used by Kar Brokers with permission of Winders, the motions of defendant, Beacon, are overruled and judgment is for the plaintiff.

Judgment for the plaintiff, Orrin D. Larcamp, against the defendant, The Beacon Mutual Indemnity Company, in the amount of $2405.00, with interest from October 18, 1961 at 6%, and costs.