LONG, Admr., Appellee,

v.

HURLES, Appellee, et al.; Heritage Mutual Insurance Company, Appellant.

[Cite as *Long v. Hurles* (1996), 113 Ohio App.3d 228.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–96–02.

Decided Aug. 2, 1996.

*Siferd & Reed, L.P.A.,* and *Richard E. Siferd,* for Elizabeth Diana Long.

*Daley, Balyeat, Balyeat & Leahy* and *Robert L. Balyeat; Gooding, Huffman, Kelley & Becker* and *C. Bradford Kelley,* for appellee, Lee A. Hurles.

*Vorys, Sater, Seymour & Pease, Michael W. Donaldson* and *John L. Landolfi,* for appellant, Heritage Mutual Insurance Company.

*Baran, Piper, Tarkowsky, Fitzgerald & Theis Co., L.P.A.,* and *J. Alan Smith,* for Progressive Casualty Insurance Company.

HADLEY, Presiding Judge.

This is an appeal from the judgment entries of the Allen County Court of Common Pleas in a declaratory judgment action regarding the availability of insurance coverage under a policy issued by defendant-appellant, Heritage Mutu-

al Insurance Company ("appellant"), to W.W. Schooler Enterprises ("Schooler"),[1] the employer of defendant, Lee Hurles ("Hurles").

Plaintiff Elizabeth Long ("Long") filed a wrongful death action in October 1994 against Hurles after a truck-bicycle accident resulted in the death of her husband. The accident occurred on Saturday, September 10, 1994. At that time, Hurles was operating a truck owned by Schooler and insured by appellant. Hurles had taken the truck home on Friday, without expressly asking for permission, and Hurles was not working on that Saturday. He used the truck to drive from his home near Spencerville to Van Wert to inspect a personal job concerning a tree removal. A friend accompanied Hurles in the truck. After leaving Van Wert, Hurles and his friend drove to Lima. In Lima, they looked for car parts and went to garage sales. The accident occurred upon their return to Spencerville.

An agreed entry, dated December 27, 1994, permitted appellant to intervene as a defendant. Thereafter, appellant filed its answer, counterclaim, and crossclaim, seeking a declaratory judgment that Hurles, at the time of the accident, was using Schooler's vehicle without permission and, thus, pursuant to the policy language, no coverage was available. Long filed a second amended complaint on January 3, 1995, adding her insurance carrier, Progressive Casualty Insurance Company ("Progressive"). In this complaint, Long demanded a declaratory judgment that Progressive would be liable pursuant to its uninsured motorist coverage if no coverage was found under appellant's policy. Appellant subsequently filed a summary judgment motion, which was denied by the trial court on September 13, 1995. The matter was heard on November 16, 1995.

In its judgment entry of December 13, 1995, the trial court found that Hurles was an insured under the policy pursuant to the policy language that defined "insureds" as "[a]nyone else while using with your permission a covered auto you own" and, therefore, appellant was required to defend Hurles in the suit brought by Long.[2] A judgment was then entered on January 8, 1996 reflecting an agreement that the December 13 judgment entry should be amended to include Civ.R. 54(B) language. It is from these judgment entries that appellant raises two assignments of error.

### Assignment of Error No. 1

"The trial court erred as a matter of law where its legal conclusion was based upon a finding of fact that was contrary to the conceded and undisputed facts in evidence."

---

1. Schooler is also referred to as Town & Country Industries.

2. A supplemental order, entered on December 28, 1995, found that appellant must also indemnify Hurles for any obligations which may arise from this cause of action.

### Assignment of Error No. 2

"The trial court erred as a matter of law where its legal conclusion was based upon the misapplication of well-established legal authorities to the facts in evidence."

Appellant maintains that the trial court's finding that "Hurles was not familiar with any written or expressed policy in regards to the use of company vehicles" is contrary to the evidence. Appellant further contends that "[t]he trial Court should have found an express policy requiring permission which was violated and [should] never have considered implied permission." In the alternative, appellant states that if there was any "arguably implied permission" to use the truck for transportation to and from work, the use of the truck at the time of the accident constituted a gross departure from that permission. Summarily, appellant submits that since Hurles had no permission to use the vehicle at the time of the accident, there is no coverage under its policy. In essence, appellant is asserting that the trial court's findings of fact, and, in turn, its judgment are against the weight of the evidence.[3] Since appellant's two assignments of error are interrelated, we consider them jointly.

For clarity, we briefly set forth the trial court's conclusions regarding Hurles's permission to use the truck and his qualification as an insured under appellant's policy. The trial court found that there was no express or written company policy regarding the use of vehicles. Hence, it concluded that Hurles had no familiarity with an express or written policy. The trial court further held that based on the evidence, there was an implied permission policy for Hurles to utilize company vehicles for personal use. Furthermore, the trial court concluded that Hurles's use of the truck at the time of the accident was a minor deviation from the scope of the implied permission granted to Hurles. Thus, the trial court found that appellant's insurance policy to Schooler extended coverage to Hurles.

Permission to use a vehicle may be express or implied. *Erie Ins. Group v. Fisher* (1984), 15 Ohio St.3d 380, 383, 15 OBR 497, 499–500, 474 N.E.2d 320, 323. Such permission, however, must exist at the time of accident and may not be based upon mere "initial permission." *Id.; Frankenmuth Mut. Ins. Co. v. Selz* (1983), 6 Ohio St.3d 169, 171–172, 6 OBR 227, 228–230, 451 N.E.2d 1203, 1205. The "initial permission rule" holds that once initial permission is granted, "subsequent use by the permittee, short of conversion or theft, remains permissive, notwithstanding that the use exceeded limitations included in the initial

---

3. Appellant also contends that the trial court erred by finding that Hurles had a "reasonable belief" that he had permission to use the vehicle. In doing so, the trial court stated that it "need not address the same." Since we affirm the trial court's judgment as discussed *infra*, we decline to review this issue.

grant of permission." *Erie Ins. Group*, 15 Ohio St.3d at 383, 15 OBR at 500, 474 N.E.2d at 323. This rule has consistently been rejected in favor of the "minor deviation" rule. *Id.; Frankenmuth Mut. Ins. Co., supra; Gulla v. Reynolds* (1949), 151 Ohio St. 147, 39 O.O. 2, 85 N.E.2d 116. Under the "minor deviation" rule, coverage will be extended to the use of a vehicle only where the use "deviates only slightly" from the use for which permission was granted. *Frankenmuth Mut. Ins. Co.*, 6 Ohio St.3d at 171, 6 OBR at 228–229, 451 N.E.2d at 1204.[4] If, on the other hand, the use of the vehicle is a "gross deviation from the scope of permission," no coverage is available. *Id.*

■ In the instant case, the record contains a written policy for use of company vehicles, however, this was dated and distributed after the accident.[5] There was testimony that Schooler had a relaxed management style, employees had a certain degree of discretion regarding vehicle use (and had utilized vehicles during times when they were not working), keys were readily available, and no sign-out logs were used. Additionally, the vice president (and son-in-law of the owner) had used a company truck for an extended vacation and the owner indicated that various employees were allowed to use company vehicles for personal use.

In particular, the vice president testified that he had told Hurles that the company vehicles were restricted to company use, but also indicated that employees had asked to use the vehicles for personal business. He testified that permission "depend[ed] on the person." Hurles testified that the vice president told him on one occasion that "he needed the trucks back that night." Hurles also acknowledged that an employee is supposed to ask permission, but if the owner or vice president wasn't "around," he would just let someone know he was taking a vehicle. Specifically, Hurles had taken a company truck home on other occasions, including weekends and the Thursday and Friday prior to the accident, with and without permission. No disciplinary action was taken as a result of these actions. Moreover, even though Hurles "gathered since I worked there" that he was to restrict use of a vehicle to transportation to and from work, he testified that there were no specific instructions regarding "how you should go

---

4. In *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 642 N.E.2d 615, the Ohio Supreme Court declined to address whether the minor deviation rule should be rejected in favor of the initial permission rule. Nonetheless, the dissent argued that the majority appeared to apply the initial permission rule. *Id.* at 163, 642 N.E.2d at 624 (Wright, J., dissenting).

5. The policy stated:
    "If you take a company owned vehicle home with you, you ARE NOT authorized to drive the vehicle on personal time, on weekends, or after hours. * * * If you must use a company owned vehicle for personal use, *PRIOR* authorization must be received either from Wally Schooler or from Tim Graham."

about taking it home and what you should use it for." He further indicated that he had previously used a company truck for short errands and had never been told that he was prohibited from utilizing the truck in this manner.

In reviewing the record, we are "guided by a presumption that the findings of the trier-of-fact were indeed correct." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276. Based upon the above evidence, as well as the rest of the record, we find that there is "some competent, credible evidence" to support the trial court's finding that there was no express or written policy regarding the use of company vehicles and, in turn, no awareness by Hurles of an express policy. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Furthermore, the trial court's conclusion that Hurles had implied permission to utilize the vehicle for personal use and that such use of the vehicle at the time of the accident was only a "minor deviation" from that permission is also "supported by some competent, credible evidence." *Id.* The decisions of the trial court, therefore, will not be reversed on appeal.

Accordingly, appellant's two assignments of error are overruled and the judgment of the Allen County Court of Common Pleas is affirmed.

*Judgment affirmed.*

THOMAS F. BRYANT and SHAW, JJ., concur.