{¶ 20} I respectfully dissent and would conclude that UM/UIM coverage under the Clarendon policy did not arise by operation of the law. Accordingly, I would affirm the trial court's granting of summary judgment albeit on alternative grounds and, as UM/UIM coverage did not exist for the Plaintiffs under the Clarendon policy, I would find Plaintiffs' and Nationwide's assignments of error moot.
 {¶ 21} The version of R.C. 3937.18 in effect on October 1, 2000, was enacted by S.B. 267. Thus, S.B. 267 governs our determination of Plaintiffs' UM/UIM coverage under the Clarendon policy. It states:
 {¶ 22} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy due to bodily injury or death suffered by such insureds:
 {¶ 23} "(1) Uninsured motorist coverage * * *.
 {¶ 24} "(2) Underinsured motorist coverage * * *."
 {¶ 25} In accordance with R.C. 3937.18, in the instant matter, UM/UIM coverage arises by operation of law only if Clarendon had a duty to offer such coverage to the City. Clarendon only had a duty to offer UM/UIM coverage if the Clarendon policy constituted an "automobile liability or motor vehicle liability policy of insurance."
 {¶ 26} H.B. 261 amended R.C. 3937.18 to include a definition of "automobile liability or motor vehicle liability policy of insurance." R.C. 3937.18(L) specifically defined "automobile liability or motor vehicle policy of insurance" as either of the following:
 {¶ 27} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
 {¶ 28} "(2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section."
 {¶ 29} It is undisputed that the Clarendon policy was not an umbrella policy.[1] Accordingly, we must determine whether the Clarendon policy "serve[d] as proof of financial responsibility." R.C. 3937.18(L)(1).
 {¶ 30} R.C. 4509.01(K) defines "proof of financial responsibility" as:
 {¶ 31} "(K) `Proof of financial responsibility' means proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle in the amount of twelve thousand five hundred dollars because of bodily injury to or death of one person in any one accident, in the amount of twenty-five thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of seven thousand five hundred dollars because of injury to property of others in any one accident."
 {¶ 32} However, R.C. 4509.01(K) is inapplicable to the instant matter pursuant to 4509.71, which states:
 {¶ 33} "Sections 4509.01 to 4509.79, except section 4509.06, of the Revised Code do not apply to any motor vehicle owned and operated by the United States, this state, any political subdivision of this state, any municipal corporation therein or any private volunteer fire company serving a political subdivision of the state. Section 4509.06 of the Revised Code does not apply to any vehicle owned and operated by any publicly owned urban transportation system."
 {¶ 34} R.C. 4509.71 expressly excludes political subdivisions and municipal corporations from the mandates of the financial responsibility laws of Ohio. In other words, Ohio law does not require such entities to provide proof of financial responsibility for the vehicles they own and/or operate. Accordingly, as municipalities are not required to prove financial responsibility, the Clarendon policy issued to the City did not serve as "proof of financial responsibility." Since the Clarendon policy did not serve as "proof of financial responsibility," then it was not an "automobile liability or motor vehicle policy of insurance." See Russell v. Heritage Mut.Ins. Co. v. Jones, Hamilton App. No. C-030868, 2004-Ohio-5851, citing De Uzhca v. Derham, Montgomery App. No. 19106, 2002-Ohio-1814. Consequently, as the Clarendon policy was not an automobile liability policy of insurance as required by R.C.3937.18, Clarendon was not required to offer UM/UIM insurance coverage to the City and such coverage did not arise by operation of law. See Acree v. CNA Ins. Cos., Hamilton App. No. C-020710, 2003-Ohio-3043; Gilcreast-Hill v. Ohio Farmers Ins. Co., Summit App. No. 20983, 2002-Ohio-4524.
 {¶ 35} The majority maintains that "Although the City of Garfield Heights is not required under R.C. 4509.71 to provide proof of financial responsibility for the vehicles they own or operate, once the City of Garfield Heights elects to provide such proof of financial responsibility, the insurer must offer UM/UIM coverage to its insured in accordance with R.C. 3937.18." This argument completely ignores the plain language of the applicable statutes prescribed by the legislature and is not based on any legal principle.
 {¶ 36} Moreover, it is irrelevant that the City was insured under the Clarendon policy for accidents caused by their insureds. The language used by the General Assembly in R.C.4509.71, which concerns political subdivisions and municipalities, should be interpreted with the purpose of the law fully in mind. See Gulla v. Reynolds (1949), 151 Ohio St. 147,159, 151 Ohio St. 147, 39 Ohio Op. 2, 85 N.E.2d 116 (J. Matthias, dissent). The financial responsibility laws were enacted to protect individuals from financially irresponsible drivers. Id. As government entities are not financially irresponsible drivers, R.C. 4509.71 expressly states that the financial responsibility laws do not apply to government entities. Hence, if a city elects to obtain insurance, it is to protect itself financially, not to meet the mandates of a law inapplicable to it.
 {¶ 37} Accordingly, by electing to obtain insurance to protect itself financially, the City of Garfield Heights did not change the fact that the Clarendon insurance policy did not "serve as proof of financial responsibility." An insurance policy that does not serve as proof of financial responsibility is not an "automobile liability or motor vehicle policy of insurance" and thus, is not subject to the mandates of R.C. 3937.18. Accordingly, I would affirm the trial court's granting of summary judgment on behalf of Clarendon but instead find that Clarendon did not have a duty to offer the City UM/UIM coverage and such coverage did not arise by operation of law. Furthermore, because UM/UIM coverage for the Plaintiffs did not exist under the Clarendon policy, I would find Plaintiffs' and Nationwide's assignments of error moot.
[1] In the instant action, the parties stipulated that the Clarendon Umbrella Policy provides UM/UIM coverage in this case for an additional One Million Dollars ($1,000,000) if the court determines that the Clarendon auto policy provides UM/UIM coverage by operation of law. Thus, for matters of determining coverage, the umbrella policy is not applicable.