[Cite as *Deen v. Ansted*, 2019-Ohio-3125.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Alex Deen

    Appellant

v.

Donald Ansted, et al.

    Appellee

Court of Appeals No. L-18-1071

Trial Court No. CI0201502930

**DECISION AND JUDGMENT**

Decided:  August 2, 2019

* * * * *

Steven L. Crossmock and Stevin J. Groth, for appellant.

Andrew Ayers, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Plaintiff-appellant, Alex Deen, Administrator of the Estate of Mustafa

Nasirdeen, appeals the March 13, 2018 judgment of the Lucas County Court of Common

Pleas which granted summary judgment in favor of intervening plaintiff-appellee, Home-

Owners Insurance Company ("Home-Owners"), and denied appellant's motion for summary judgment. Because we find that issues of material fact remain, we reverse.

{¶ 2} The relevant facts are as follows. On August 10, 2014, Mustafa Nasirdeen drowned in a private lake at the Hidden Harbour subdivision in Holland, Lucas County, Ohio, after falling/being pushed[1] from a pontoon boat operated by Ryan Benham, grandson of boat-owners and residents Donald and Kathy Ansted. Benham did not reside at the home.

{¶ 3} On the date of the accident, the Ansteds were covered by a homeowner's insurance policy issued by appellant Home-Owners which defined persons who would be considered insureds under the policy as follows:

> 5. Insured means:
>
> * * *
>
> In SECTION II- PERSONAL LIABILITY PROTECTION, insured also means:
>
> * * *
>
> (e) any person or organization legally responsible for animals or watercraft covered by this policy and owned by a person included in a., b. or c. above. However, we will cover that person or organization only with respect to those animals or watercraft. We will not cover any person nor

---

[1] The exact cause of his fall into the water remains disputed in the underlying case and is not relevant for purposes of this appeal.

2.

organization using or having custody of animals or watercraft in the course

of any business nor without permission of the owner.

The Ansteds were also covered under an umbrella or excess personal liability coverage policy for individuals named or qualifying as insureds which provided:

"Insured" means you and also:

* * *

(b) Any person using an automobile or watercraft you own, hire or borrow and any person or firm liable for the use of such vehicle or craft. Any person using an aircraft you own. Actual use must be with the reasonable belief that such use is with, and within the scope of, your permission.

**{¶ 4}** This action commenced on June 8, 2015, with appellant filing a complaint including wrongful death and negligence claims against the Ansteds and their grandson. The complaint was amended to raise claims against others on board the boat that day. On November 25, 2015, appellee filed an intervenor's complaint for declaratory judgment requesting that the court declare that its insured had no coverage under their homeowners and umbrella insurance policies due to the fact that their grandson was not operating the boat within the scope of their permission.

**{¶ 5}** Appellant and appellee filed motions for summary judgment in the declaratory judgment action. Relied upon by the parties were the pleadings and the depositions of the Ansteds, Ryan Benham, and two of the boat passengers. On March 13, 2018, the trial court granted summary judgment in favor of appellee, Home-Owners, and

3.

denied appellant's motion for summary judgment. The court concluded that the fact that Ryan allowed alcohol on the pontoon boat was a gross deviation from the scope of the permission given by his grandparents and, thus, coverage under their insurance policies was not available. This appeal followed.

{¶ 6} Appellant raises the following assignment of error for our review:

I. The trial court erred to the prejudice of the plaintiff when it granted defendant Home-Owners' motion for summary judgment.

{¶ 7} In appellant's sole assignment of error, he argues that the trial court erred by failing to acknowledge that the Ansteds' answer to the plaintiff's complaint which stated that Ryan was using the boat with their permission was conclusive evidence of this fact. Appellant then argues that assuming that the admissions did not operate to establish permission, genuine issues of fact remained which precluded the summary judgment award.

{¶ 8} We note that in reviewing a ruling on a motion for summary judgment, this court must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). Summary judgment will be granted when there remains no genuine issue as to any material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Further, we review de novo all the evidence and arguments presented in appellant's motion for summary judgment and appellee's opposition.

4.

**{¶ 9}** At issue is whether the Ansteds' insurance policies provided coverage at the time of the incident. "In Ohio, insurance contracts are construed as any other written contract." *Andray v. Elling*, 6th Dist. Lucas No. L-04-1150, 2005-Ohio-1026, ¶ 18, citing *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992). If the language of the policy is clear and unambiguous, there are no issues of fact and interpretation is a matter of law. *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984), citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978). Conversely, policies that are "reasonably susceptible of more than one interpretation * * * will be construed strictly against the insurer and liberally in favor of the insured." *Lane v. Grange Mut. Cos.*, 45 Ohio St.3d 63, 65, 543 N.E.2d 488 (1989).

**{¶ 10}** Additionally, under Ohio law, "'an exclusion in an insurance policy will be interpreted as applying only to that which is clearly intended to be excluded.'" *Sylvania Twp. Bd. of Trustees v. Twin City Fire Ins. Co.*, 6th Dist. Lucas No. L-03-1075, 2004-Ohio-483, ¶ 6, quoting *Westfield Companies v. O.K.L. Can Line*, 155 Ohio App.3d 747, 2003-Ohio-7151, 804 N.E.2d 45, ¶ 26 (1st Dist.).

**{¶ 11}** We first address the effect of the Ansteds' admission in the initial action between appellant and the Ansteds. Specifically, the Ansteds' admission that at the relevant time, Ryan was using the boat with their permission. We conclude that although the admission was against their interests in the original action commenced by appellant, it is not binding in Home-Owners' declaratory judgment action. *See Progressive Specialty Ins. Co. v. Cunningham*, 12 Dist. Fayette No. CA96-04-007, 1996 WL 679225, *2-3

5.

(Nov. 25, 1996), citing *Gerrick v. Gorsuch*, 172 Ohio St. 417, 420 178 N.E.2d 40 (1961). Thus, the issue may still be contested by Home-Owners.

{¶ 12} Appellant's key argument on appeal is that the trial court erred in finding that Ryan's actual use of the boat was a gross deviation from the scope of his permission given by the Ansteds. Generally, permission to use a vehicle may be express or implied. *Berry v. Mosley*, 9th Dist. Summit No. 21411, 2003-Ohio-3790, ¶ 13, citing *Erie Ins. Group v. Fisher*, 15 Ohio St.3d 380, 383, 474 N.E.2d 320 (1984). Permission to use a vehicle must exist at the time of the accident and may not be based upon an "initial permission." *Frankenmuth Mut. Ins. Co. v. Selz*, 6 Ohio St.3d 169, 171, 451 N.E.2d 1203 (1983), following *Gulla v. Reynolds*, 151 Ohio St. 147, 154, 85 N.E.2d 116 (1949).

{¶ 13} Analyzing the phrase "scope of permission," Ohio courts have adopted the slight or minor deviation rule which provides:

> [W]here the use of the property deviates only slightly from the purpose for which permission was initially granted, the standard omnibus clause in a liability insurance policy will be interpreted to extend coverage. However, if the use represents a complete departure or gross deviation from the scope of permission, no coverage will be afforded. *Id.*

{¶ 14} Courts have addressed the scope of permission with regard to limitations on the time, place and manner of use. Applying Ohio law, a federal district court analyzed insurance coverage availability for an employee who, while intoxicated and engaged in personal business, had an accident in a company vehicle. *St. Paul Mercury Ins. Co. v. Pearson*, S.D. Ohio No. 2:04-CV-1104, 2007 WL 2029064 (July 10, 2007). The

6.

insurance company argued that the driver was not a "permitted user" because he was intoxicated at the time which was prohibited under company policy and, thus, outside the scope of permission. *Id.* at \*3. The court, finding an issue of fact regarding coverage, concluded that the driver's intoxication alone was not a gross deviation from any permission for use granted by his employer. The court noted that prior Ohio cases focused on the "time, place and purpose" of the vehicle's use, not on the "manner" of use. *Id.* The court further noted general public policy concerns implicated by limiting coverage due to a driver's intoxication. *Id.* at \*4.

{¶ 15} This court has determined whether coverage was available for the adult son of an insured who, although he lived with his mother, was not named as an insured on the policy. *Wilson v. GRE Ins. Co.*, 6th Dist. Lucas No. L-93-361, 1994 WL 506154 (Sept. 16, 1994). The policy at issue excluded from the definition of an insured a person using a car "without a reasonable belief of having permission to use the vehicle." *Id.* at \*2.

{¶ 16} In *Wilson*, prior to using his mother's car, the son was required to ask permission, he was not to have anyone in the car with him, and was generally not permitted to drink alcohol while living with his mother and step-father. *Id.* On the date of the accident, the driver was given permission by his mother to use the car and run three errands. He was reminded to not have anyone in the car. *Id.* After running the first errand, the driver, with a friend in the car, went to a liquor store to purchase whiskey; the duo then went to a shopping mall where they drank the whiskey. Following a second trip to the liquor store and after returning to the mall, the two were involved in an altercation and the driver was ultimately driven home in his mother's car by his father. *Id.*

7.

Thereafter, he again left in the car and picked up a total of four passengers, drove around while drinking beer, and was involved in an accident. *Id.*

{¶ 17} Agreeing with the trial court that the driver could not have had a reasonable belief that he would have been permitted to use the vehicle in the manner in which he did, we stressed that the driver broke every rule in relation to the use of the car. *Id.* at *3. Thus, the driver was outside the scope of permission and insurance coverage was properly denied. *Id.* *See generally Frakenmuth*, 6 Ohio St.3d 169, 451 N.E.2d 1203 (boat operator granted permission to test drive the vessel after making repairs was beyond the scope of permission when involved in an accident during a water skiing trip with friends); *Arkenberg v. Farm Mut. Auto Ins.*, 6th Dist. Lucas No. L-82-294, (Mar. 25, 1983) (the driver committed a major deviation in the scope of permission where he exceeded the one-hour loan of a vehicle from an acquaintance by three and one-half hours and the accident occurred six miles from the agreed-upon destination).[2]

{¶ 18} Reviewing the facts of the present case and considering the cases cited above, it is undisputed that unlike *Wilson*, *supra*, the Ansteds did not restrict the time, place, or purpose of Ryan's use of the boat. He was not limited to a certain part of the lake, number of persons on the boat, or as to the date or duration of an excursion. The deposition testimony clearly indicates Ryan had the Ansteds' express permission to use the boat and had done so on several prior occasions. Further, Mrs. Ansted was aware and

---

[2] We do acknowledge that in the polices at issue, the homeowners policy and the umbrella policy, only the umbrella policy contains a "reasonable belief" provision. This fact may or may not have relevance as the case unfolds.

8.

had personally observed that Ryan and his friends were going to use the boat on the date of the accident.

{¶ 19} Construing the evidence in a light most favorable to the nonmoving party, we must conclude that material fact questions remain regarding whether Ryan had permission to use the boat in light of the alcohol brought on board. Specifically, the trier of fact should determine whether, under all the current facts and facts to be presented, this was a minor deviation from the scope of permission or a gross deviation which negated Ryan's general permission to use the boat the day of the accident. Appellant's assignment of error is well-taken.

{¶ 20} Based on the foregoing, we find that substantial justice was not done the party complaining and the judgment of the Lucas County Court of Common Pleas is reversed. Pursuant to App.R. 24, appellee is ordered to pay the costs of this appeal.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                   _____
                                            JUDGE
Arlene Singer, J.              
CONCUR.                                 _____
                                            JUDGE

Gene A. Zmuda, J.            _____
CONCURS AND WRITES                               JUDGE
SEPARATELY.

**ZMUDA, J.,**

{¶ 21} I concur with the majority's conclusion that there are genuine issues of material fact as to whether Ryan's operation of the boat was within the scope of permission granted by the boat's owner in light of the conflict between the pleadings, which contain admissions that Ryan's operation of the boat was with the Ansteds' permission, and the deposition testimony suggesting that permission was theoretically with limitations. Applying the well-established standard for summary judgment, I find that the trier of fact must resolve the factual question of whether Ryan's operation of the boat was within or exceeded the permission granted by the Ansteds. Therefore, I agree with the majority that the trial court's grant of summary judgment should be reversed.

Based upon my conclusion that there are genuine issues of material fact yet to be resolved by the trier of fact, I find that an analysis of the minor deviation rule is premature and unnecessary. Such analysis may become relevant only *after* the factual issues are resolved. As such, it is not necessary to address here. With that limitation in mind, I concur.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.