OPINIONS OF THE SUPREME COURT OF OHIO
      The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
      Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
      NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Continental Insurance Company, Appellee, v. Whittington et al.,
Appellees; Smith et al., Appellants.
[Cite as Continental Ins. Co. v. Whittington (1994),     Ohio
St.3d     .]
Civil procedure -- Any error by trial court in denying
      motion for summary judgment is rendered moot or harmless,
      when.
                              ---
Any error by a trial court in denying a motion for summary
      judgment is rendered moot or harmless if a subsequent
      trial on the same issues raised in the motion demonstrates
      that there were genuine issues of material fact supporting
      a judgment in favor of the party against whom the motion
      was made.
                              ---
      (No. 93-667 -- Submitted October 11, 1994 -- Decided
December 14, 1994.)
      Appeal from the Court of Appeals for Darke County, No.
CA-1295.
      On July 5, 1989, at approximately 9:30 p.m., Sean Sonner
("Sonner") was involved in an accident while driving a van
owned by his employer, appellees Terry Whittington and William
Brinley, d.b.a. Whittington Produce ("Whittington Produce").
Thomas Sonner (Sonner's brother), Michelle Smith and Lewis
Hawes, appellants, were passengers in the vehicle.  At the time
of the accident, Sonner was using the company van for his own
personal purposes.  No other vehicle was involved in the crash.
      Whittington Produce was owned and operated as a
partnership by Terry Whittington and William Brinley.  At the
time of the accident, Whittington Produce was insured under a
policy of motor vehicle liability insurance issued by
Continental Insurance Company ("Continental"), appellee.1  The
policy contained a section known as an "omnibus clause"
required by R.C. 4509.51(B).2  Specifically, Section II(A)(1)
of the policy defined the "insureds" as follows:
      "a.  You [Whittington Produce] for any covered 'auto'.
      "b.  Anyone else while using with your [Whittington
Produce's] permission a covered 'auto' you own, hire or borrow

* * *."  (Emphasis added.)

The vehicle involved in the accident was a covered "auto" within the meaning of the policy.

On October 13, 1989, Continental filed an action for declaratory judgment in the Court of Common Pleas of Darke County, naming, as defendants, Terry Whittington, William Brinley, Whittington Produce, Sonner, Michelle Smith, Lewis Hawes, Thomas Sonner and others.  In the complaint, Continental alleged that Sonner did not have permission to use the company van for personal purposes at the time of the accident. Therefore, Continental sought a declaration that no coverage was available under the terms of the policy because Sonner was not an "insured" at the time of the accident.  Further, Continental sought a declaration that it owed no duty to defend or indemnify Sonner or Whittington Produce in any subsequent tort action brought by anyone claiming to have suffered injury or damage as a result of the accident.

The following relevant matters were elicited upon discovery.

Whittington Produce is a business that transports live poultry from farms to other locations.  As part of the business operation, employees are transported to and from work in company-owned vehicles.  On July 5, 1989, at approximately 5:00 or 5:30 p.m., Terry Whittington gave Sonner express permission to use a company van to drive several employees home from work.  Whittington instructed Sonner to keep the van overnight, to park the van in front of his (Sonner's) house, and to pick up the employees the following morning to return them to work. Whittington never told Sonner not to use the van for personal purposes.  Whittington Produce had no written policy prohibiting personal use of company vehicles.  However, according to Whittington, all employees knew that personal use of company vehicles was strictly prohibited.

On the evening of July 5, 1989, Sonner drove the employees to their homes in accordance with Whittington's instructions. He then drove home and parked the van.  Later, he drove the van to a friend's house.  There, he decided to take the vehicle out on the town for the evening.  He was joined by Thomas Sonner, Hawes, Smith, and others.  The accident occurred while Sonner was using the van for his own social and personal benefit.  In his deposition, Sonner admitted that his personal use of the van at the time of the accident exceeded the scope of permission given to him by Whittington.  He testified that company vehicles were ordinarily not used by employees for personal pursuits.  Following the accident, Sonner was not fired or otherwise disciplined for having used a company vehicle for personal purposes.

Thomas Sonner and Lewis Hawes were deposed on August 22, 1990.  Both men had worked for Whittington Produce.  Thomas Sonner testified that prior to July 5, 1989, several Whittington Produce employees had regularly used company vehicles for personal purposes.  He further testified that Whittington normally allowed employees to ride around or "cruise" in company vehicles after working hours.  Hawes testified that he knew of no policy prohibiting personal use of company vehicles.  Hawes also testified that Terry Whittington never seemed to care whether company vehicles were used by

employees for personal purposes.

Continental filed a Civ.R. 56 motion for summary judgment, arguing that Sonner had exceeded the scope of permission granted to him by Whittington to use the van for a limited business purpose. Therefore, Continental claimed that it was entitled to a declaration that Sonner was not an "insured" at the time of the accident and, thus, no coverage was available under the terms of the policy. Continental also argued that Sonner's use of the vehicle at the time of the accident represented a "complete deviation" from the scope of permission originally granted to him by Whittington. In this regard, Continental claimed that no coverage was available under the so-called "minor deviation" rule of Gulla v. Reynolds (1949), 151 Ohio St. 147, 39 O.O. 2, 85 N.E.2d 116. The "minor deviation" rule states that where the use of a vehicle deviates slightly from the purpose for which permission was initially granted, a standard omnibus clause in a liability insurance policy will be interpreted to extend coverage, but if the use represents a gross deviation from the scope of permission given, no coverage is to be afforded. See Frankenmuth Mut. Ins. Co. v. Selz (1983), 6 Ohio St.3d 169, 171, 6 OBR 227, 229, 451 N.E.2d 1203, 1204, and Erie Ins. Group v. Fisher (1984), 15 Ohio St.3d 380, 383, 15 OBR 497, 500, 474 N.E.2d 320, 323-324.

Smith, Hawes and Thomas Sonner (collectively referred to as "appellants") opposed the motion, urging that questions of fact remained to be determined as to whether Sonner had implied permission to use the vehicle for personal purposes at the time of the accident. Whittington and Brinley also opposed the motion, but only on the issue whether Continental had a duty to defend them in any subsequent tort action filed by persons claiming to have been injured or damaged as a result of the accident. In a reply memorandum, Continental stated that "[t]he plaintiff does acknowledge the position of the defendants Terry Whittington and William Brinley. As they are named insureds on the policy, Continental does not assert the position that coverage should be excluded as to them." From that point forward, the interests of Continental and Whittington and Brinley, d.b.a. Whittington Produce, became aligned. Continental eventually dismissed those portions of the complaint relating to Whittington and Brinley.

On November 9, 1990, the trial court denied Continental's motion for summary judgment, finding that genuine issues of material fact remained to be determined regarding the scope of permitted use. Thereafter, the matter proceeded to trial before a jury.

At trial, evidence was presented which, if accepted, established that Sonner's use of the van at the time of the accident was within the scope of implied permission initially granted to him by Whittington. Sonner's testimony at trial indicated that prior to July 5, 1989, vehicles entrusted to Whittington Produce employees to transport workers to and from work were, as a matter of custom and practice, frequently used by employees for personal purposes. Sonner claimed that he had relied on this custom and practice when he used the van for personal reasons on the night of the accident. In this regard, Sonner admitted to having lied at his deposition wherein he had claimed no prior knowledge of authorized personal use of

company vehicles.  According to Sonner, he lied at his deposition because, among other things, he was afraid of losing his job.  Sonner indicated that he was able to tell the truth at trial because he was "not afraid anymore," presumably because he was no longer employed by Whittington Produce. Sonner's testimony was supported by the testimony of other witnesses who detailed a long and established history involving personal use of company vehicles.  The direct and circumstantial evidence at trial also tended to establish that Terry Whittington knew or should have been aware of the widespread personal use of company vehicles, and that Whittington may have tolerated or condoned such activities.

Following the presentation of evidence, the jury was asked to determine whether Sonner had express or implied permission to use the van for personal purposes at the time the accident occurred -- i.e., whether Sonner was an "insured" within the meaning of Section II(A)(1)(b) of the policy.  The trial court also instructed the jury on the "minor deviation" rule of Gulla, supra.  The trial court rejected appellant Smith's request that the jury be instructed on the so-called "initial permission" rule.  The "initial permission" rule, which has been rejected in this state on a number of previous occasions, provides that when an owner of a motor vehicle consents to its use by a permittee, any subsequent use by the permittee remains permissive short of conversion or theft of the vehicle, notwithstanding that the subsequent use exceeds limitations included in the initial grant of permission.  See Erie, supra, 15 Ohio St.3d 380, 383, 15 OBR 497, 500, 474 N.E.2d 320, 323.

In response to specific interrogatories, the jury found that (1) Sonner did not have express permission to use the van at the time of the accident, (2) Sonner had the implied permission of Whittington, Brinley, or both, d.b.a. Whittington Produce, to operate and use the vehicle at the time of the accident, and (3) Sonner's use of the van at the time of the accident did not deviate from the permission originally granted to him by Whittington.  Accordingly, the trial court entered judgment in accordance with the jury's findings, holding that Sonner was an "insured" under the policy and that coverage for the accident was therefore available.

Continental appealed to the court of appeals, urging, among other things, that the trial court erred in denying Continental's pretrial motion for summary judgment.  Appellant Smith cross-appealed, claiming that the trial court erred in refusing to adopt the "initial permission" rule in its instructions to the jury.

As to the cross-appeal, the court of appeals, citing Erie, supra, 15 Ohio St.3d 380, 15 OBR 497, 474 N.E.2d 320, rejected Smith's contention that the trial court erred in failing to adopt the "initial permission" rule.  With respect to Continental's appeal, the court of appeals determined that the trial court erred in denying Continental's motion for summary judgment.  Specifically, the court of appeals, reviewing the record as it existed at the time the trial court denied the motion, held that the deposition testimony of Whittington, Sonner, Hawes and Thomas Sonner demonstrated that Sonner had no permission, express or implied, to use the vehicle for personal purposes, and that Sonner's use of the vehicle at the time of

the accident grossly deviated from the scope of permission originally granted to him by Whittington.  On this basis, the court of appeals reversed the judgment of the trial court and ordered that summary judgment be entered in favor of Continental.

The cause is now before this court pursuant to the allowance of motions to certify the record.

Bieser, Greer & Landis and David P. Williamson, for appellee Continental.

Hanes, Schipfer, Hurley, McClurg, Cooper & Graber and William H. Cooper, for appellees Terry Whittington and William Brinley, d.b.a. Whittington Produce.

Pickrel, Schaeffer & Ebeling Co., L.P.A., and James W. Kelleher, for appellant Michelle Smith.

Bertram & Hayes and William H. Bertram, Jr., for appellants Lewis Hawes and Thomas Sonner.

Dyer, Garofalo, Mann & Schultz, Ronald E. Schultz and Kimberly K. Harshbarger, urging reversal for amicus curiae, Ohio Academy of Trial Lawyers.

Douglas, J.     The primary issue in this case is whether the court of appeals erred in reversing the final judgment of the trial court based upon the trial court's decision denying Continental's motion for summary judgment.  The court of appeals held that the question whether a trial court errs in granting or denying a motion for summary judgment hinges upon a review of the evidence that was before the trial court at the time the decision was made.  The evidence before the trial court at the time Continental's motion for summary judgment was denied consisted of the deposition testimony of Whittington, Sonner, Hawes and Thomas Sonner.  On the basis of this evidence, the court of appeals reversed the final judgment of the trial court and ordered that summary judgment be entered in favor of Continental, stating that:

"[I]t must be concluded that Sean Sonner's use of the vehicle at the time of the accident on July 5, 1989, was not with Terry Whittington's permission, express or implied. Further, rational minds could only conclude that Sonner's use of the vehicle grossly deviated from any permission given to him by Terry Whittington when he entrusted the van to Sonner. Therefore, under the rule of Gulla v. Reynolds, supra [151 Ohio St. 147, 39 O.O. 2, 85 N.E.2d 116], Sonner was not an insured to whom coverage is extended under the 'omnibus clause' of the policy issued by Continental to Whittington.  There is no genuine issue of material fact concerning the matter in dispute.  Civ.R. 56(C) mandates summary judgment for Continental upon its motion.  The trial court erred in denying Continental's motion for summary judgment."

However, we find that even if the trial court erred in denying Continental's motion for summary judgment, that error did not rise to the level of reversible error.  In our judgment, the court of appeals erred in reversing the trial court's final judgment in favor of appellants by failing to consider the requirements of Civ.R. 61, which states:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in

anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." (Emphasis added.)

Here, substantial justice was done at the trial court level following the trial on the merits. The evidence adduced at trial revealed the existence of genuine issues of material fact concerning the issues raised by Continental in its motion for summary judgment. While the record before the trial court at the time it denied the motion may not have reflected that situation, the facts as we now know them, as determined by the jury, show that Continental was clearly liable to provide coverage under the terms of the policy. Under these circumstances, it would seem incongruous to now say that the trial court committed reversible error in denying Continental's motion. Any error in the denial of the motion was rendered moot or harmless since a full and complete development of the facts at trial (as opposed to the limited factual evidence elicited upon discovery) showed that appellants were entitled to judgment. In this regard, substantial justice would clearly not be served by setting aside the jury's findings and the final judgment of the trial court.

Accordingly, we reverse the judgment of the court of appeals and reinstate the final judgment of the trial court. We hold that any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made.3 In so holding, we are persuaded by Graham v. Pavarini (1983), 9 Ohio App.3d 89, 9 OBR 140, 458 N.E.2d 421, wherein an Ohio appellate court held, at paragraph three of the syllabus, that "[a]ny error by the denial of a summary judgment is rendered moot or harmless where evidence at a subsequent trial on the same issues demonstrates that there were genuine issues of material fact and that evidence supported a judgment for the party opposing summary judgment." See, also, Sanders v. Mt. Sinai Hosp. (1985), 21 Ohio App.3d 249, 256, 21 OBR 292, 300, 487 N.E.2d 588, 596 ("We need not evaluate the evidentiary materials supporting and opposing the hospital's summary judgment motion on this issue. Any error in denying that motion is moot or harmless, even if it had merit when the court denied it. Graham v. Pavarini [1983], 9 Ohio App.3d 89, 95 [9 OBR 140, 146, 458 n.e.2D 421, 428]. The subsequent trial demonstrated that there was a genuine issue of material fact on this subject."). But, see, Love v. Motorists Mut. Ins. Co. (1993), 86 Ohio App.3d 394, 620 N.E.2d 987. We are also persuaded by the fact that courts throughout this country generally hold that the denial of a motion for summary judgment is not a point of consideration in an appeal from a final judgment entered following a trial on the merits. See, generally, Annotation, Reviewability of Order Denying Motion for Summary Judgment (1967), 15 A.L.R.3d 899, 922-925, and 1994

Supplement at 72-76.  In this regard, the case of Home Indemn. Co. v. Reynolds & Co. (1962), 38 Ill.App.2d 358, 187 N.E.2d 274, is particularly compelling.  In that case, an Illinois appellate court made the following enlightening observations:

"The contention that the trial court erred in denying the motions for summary judgment [filed by plaintiff Home Indemnity, an insurer, against defendant Reynolds & Co., the insured] poses an unusual question.  Does a party, whose motion for summary judgment is denied, have the right to have the denial of its motion reviewed after the case goes to trial and a verdict is returned against it?  * * *

"* * * [W]e will, for the purpose of reaching the substance of the issue presented, make two assumptions:  (a) that one or both of its [Home Indemnity's] motions should have been granted and (b) that the verdict in favor of Reynolds was not against the weight of the evidence.  Obviously, under these assumptions the evidence must have differed at the time of the motions and at the time of the trial.  Obviously, a greater quantity or a better quality of evidence was produced by Reynolds at the trial than on the motions.

"An incorrect ruling [denying Home Indemnity's motions] deprived the moving party of a judgment it should have had.  It could not immediately appeal from the orders denying its motions because the orders were not final and appealable.  * * *  If it cannot appeal after judgment, * * * what remedy does it have?  To deny a review seems to be unjust.  But to grant it would necessarily result, under our first assumption, in the finding that the judgment entered upon the verdict should be set aside and that judgment should be awarded upon one of the motions.  This would be unjust to the party that was victorious at the trial, which won judgment after the evidence was more completely presented, where cross-examination played its part and where witnesses were seen and appraised.

"The greater injustice would be to the party which would be deprived of the jury verdict.  Otherwise, a decision based on less evidence would prevail over a verdict reached on more evidence and judgment would be taken away from the victor and given to the loser despite the victor having the greater weight of evidence.  This would defeat the fundamental purpose of judicial inquiry.

"We hold that if a motion for summary judgment is improperly denied the error is not reversible for the result becomes merged in the subsequent trial.  Therefore, even if an examination of the affidavits, counter-affidavits, depositions and exhibits were to lead to the conclusion that either one or both of Home Indemnity's motions should have been granted it would avail nothing, for the error cannot be reviewed."  Home Indemn. Co., supra, 38 Ill.App.2d at 365-367, 187 N.E.2d at 277-278.

We agree with this cogent analysis of the issue.  The question whether the trial court erred in denying Continental's motion for summary judgment became irrelevant and the error (if any) was corrected when the jury determined the issues at trial in favor of appellants.

We recognize that our decision today might be cited as having some impact on the case of Balson v. Dodds (1980), 62 Ohio St.2d 287, 16 O.O.3d 329, 405 N.E.2d 293, wherein this

court held, at paragraph one of the syllabus, that "[a] trial court's denial of a motion for summary judgment is reviewable on appeal by the movant from a subsequent adverse final judgment." However, as noted by the author of Balson, Justice William B. Brown, in his concurring opinion in Dupler v. Mansfield Journal (1980), 64 Ohio St.2d 116, 127, 18 O.O.3d 354, 361, 413 N.E.2d 1187, 1195, fn. 11, Balson did not address the question whether the harmless error doctrine applies to determinations denying summary judgment motions. Further, the denial of the motion for summary judgment in Balson could not have been harmless since the denial was predicated upon a pure question of law, i.e., the legal conclusiveness of a party's failure to timely respond to requests for admissions.4 Similarly, the case of Nayman v. Kilbane (1982), 1 Ohio St.3d 269, 1 OBR 379, 439 N.E.2d 888, is also distinguishable from the case at bar.5

Moreover, appellants correctly note the distinctions between the case at bar and cases such as State ex rel. Emrick v. Wasson (1990), 62 Ohio App.3d 498, 576 N.E.2d 814, and Bean v. Metro. Property & Liability Ins. Co. (1990), 68 Ohio App.3d 732, 589 N.E.2d 480. Both Emrick and Bean involved appellate review of the denial of a motion for summary judgment where no intervening trial occurred on the merits of the case. For instance, Emrick was decided by the trial court on cross-motions for summary judgment. The court found no genuine issue of material fact, and none of the parties challenged that finding. The trial court applied the law to the undisputed facts in the case, denied relators' motion, and granted the motion of the respondents. On appeal, the court of appeals reversed the decision of the trial court denying relators' motion and entered final judgment for relators, finding that the trial court erred in its conclusions of law. Id. at 508, 576 N.E.2d at 820. Our decision today has no effect on cases such as Emrick and others involving pure questions of law. We hold only that where, as here, a motion for summary judgment is denied upon a finding that genuine issues of material fact exist that must be determined at trial, and the subsequent trial on the issues raised in the motion supports a final judgment for the party against whom the motion was made, that final judgment is not to be disturbed solely because it might have appeared before trial that no genuine issue of material fact existed.

The next issue raised by appellants involves the relative merits of the "minor deviation" rule. Appellants and amicus invite this court to abandon the "minor deviation" rule in favor of the more liberal "initial permission" rule rejected in Gulla, supra, 151 Ohio St. 147, 39 O.O. 2, 85 N.E.2d 116, Selz, supra, 6 Ohio St.3d 169, 6 OBR 227, 451 N.E.2d 1203, and Erie, supra, 15 Ohio St.3d 380, 15 OBR 497, 474 N.E.2d 320. However, appellants prevailed at trial even though the jury was instructed on the "minor deviation" rule. Given our determination that the judgment of the trial court and the findings of the jury are to be reinstated, the issue whether the "minor deviation" rule should now be rejected in favor of a more liberal rule for determining the scope of permitted use is not an issue that must be decided in this case. For this reason, we decline the invitation of appellants and amicus to

revisit the rule of Gulla and its progeny.

As a final matter, Continental has raised the following proposition of law:

"The burden of proof is on a person injured to establish that the individual operating the automobile at the time of the accident comes within the protective provisions of an automobile liability insurance policy."

At trial, the trial court instructed the jury that Continental bore the burden of proof on the issue of coverage. Continental objected to this instruction. The trial court overruled the objection. On appeal, the court of appeals did not address the issue, given the court of appeals' conclusion that Continental was entitled to summary judgment.

Continental has not filed a cross-appeal in this case. However, Continental did preserve the alleged error by raising the argument in the court of appeals. In deciding the merits of this issue, we reject Continental's proposition of law since Continental was the party in the lawsuit urging the affirmative of a proposition and, thus, bore the burden of establishing the matters raised in its complaint.6

For the foregoing reasons, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

Judgment reversed.

Moyer, C.J., A.W. Sweeney, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

Wright, J., dissents.

FOOTNOTES:

1    The named insured in the policy was "Terry Whittington & William Brinley DBA Whittington Poultry." (Emphasis added.) Apparently, Whittington Poultry and Whittington Produce were names for the partnership business that were used interchangeably.

2    R.C. 4509.51 provides, in part:

"Every owner's policy of liability insurance:

"(A)  Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby granted;

"(B)  Shall insure the person named therein and any other person, as insured, using any such motor vehicles with the express or implied permission of the insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such vehicles * * *[.]"

3    We disregard as unfounded any notion that our holding today encourages the denial of valid (meritorious) motions for summary judgment. See, generally, Love v. Motorists Mut. Ins. Co. (1993), 86 Ohio App.3d 394, 404-405, 620 N.E.2d 987, 994 (Grey, J., concurring in part and dissenting in part). Obviously, we encourage trial courts to grant summary judgment where it is appropriate to do so.

4    In Balson, plaintiff Mary J. Balson filed a complaint against defendant Linda Dodds alleging that Dodds had alienated the affections of Balson's husband, and engaged in criminal conversation. Requests for admissions were filed along with the complaint. Dodds filed a timely answer to the complaint, but her answers to the requests for admissions were filed several days late. Before Dodds filed the late answers to the requested admissions, Balson had filed a motion for summary

judgment arguing that Civ.R. 36 required that the requests for admissions be deemed admitted and that Balson was entitled to judgment based upon the admissions.  The trial court denied the motion, finding that the late filing was due to an honest mistake, and that the matter should proceed to trial.  At trial, the trial court granted Dodds a directed verdict at the close of Balson's case-in-chief.  On appeal, the court of appeals affirmed the judgment of the trial court and refused to consider the issue whether the trial court had erred in denying the motion for summary judgment.

On further appeal, this court upheld the trial court's decision denying Balson's motion for summary judgment, finding that the trial court appropriately interpreted and applied Civ.R. 36 to allow Dodds to escape the legal conclusiveness of her failure to timely respond to the requests for admissions. Id., 62 Ohio St.2d at 290-291, 16 O.O.3d at 331, 405 N.E.2d at 296.

5    In Nayman, Melvin E. Mazza, Jr. filed an employment-related intentional tort action against various defendants, seeking to recover for injuries sustained at his place of employment.  The defendants moved for summary judgment claiming that the action was barred by the Workers' Compensation Act.  The trial court denied the motion and scheduled the case for trial.  Thereafter, the defendants filed an original action in prohibition in the Court of Appeals for Cuyahoga County, seeking to prohibit the trial judge from allowing the case to proceed to trial.  Alternatively, the defendants-relators requested that the court of appeals order the trial judge to grant the motion for summary judgment on all issues raised in Mazza's complaint.  The court of appeals dismissed the original action.

On appeal, this court affirmed the judgment of the court of appeals, finding that the trial court had jurisdiction to consider Mazza's cause of action.  Id., 1 Ohio St.3d at 271, 1 OBR at 380-381, 439 N.E.2d at 890.  We further indicated that defendants-relators had an adequate remedy at law to appeal the denial of their summary judgment motion at the conclusion of the trial court proceedings.  Id.  Obviously, given the facts and procedural posture of Nayman, this court did not consider whether the doctrine of harmless error would apply in any subsequent appeal from the denial of the motion.  Additionally, the issue in Nayman involved the trial court's subject matter jurisdiction -- an issue of law that could always be raised by the defendants-relators in a subsequent appeal from an adverse final judgment.

6    We note that the reported Ohio appellate decisions cited by Continental in support of its proposition are distinguishable from the case at bar.  Namely, Continental cites Baily v. Weaver (1941), 67 Ohio App. 259, 21 O.O. 248, 35 N.E.2d 1006, Marolt v. Lisitz (1952), 94 Ohio App. 298, 51 O.O. 451, 115 N.E.2d 169, and Carver v. Johnson (1962), 91 Ohio Law Abs. 40, 191 N.E.2d 62.  These cases hold that a person injured in an automobile accident bears the burden of proof in a supplemental proceeding against a liability insurance carrier to show that the driver of the automobile was an "insured" at the time of the accident.  For example, in Marolt, supra, paragraph one of the syllabus, the court held that "[w]here the

omnibus clause of an insurance policy covers one who uses the automobile with the permission of the named insured, the burden of proof is on a person injured to establish that the individual operating the automobile at the time of the accident comes within the protective provisions of the policy."  Accord Baily, supra, 67 Ohio App. 259, 21 O.O. 248, 35 N.E.2d 1006, paragraph three of the syllabus; Carver, supra, 91 Ohio Law Abs. at 42, 191 N.E.2d at 63.  However, in each of these three cases the injured person with the burden of proof was the plaintiff in the litigation.  Here, Continental initiated a declaratory judgment action seeking a determination that Sonner had exceeded the scope of the permission granted to him to operate the vehicle.  As the party in the lawsuit seeking to change the status quo and the party urging the affirmative of a proposition, Continental bore the burden of proof.  Therefore, the trial court was correct to instruct the jury as it did.

Wright, J., dissenting.   I would affirm the decision of the court of appeals.  The majority incorrectly concludes that there were genuine issues of material fact that justified the trial court's denial of Continental's motion for summary judgment.  In determining whether a denial of summary judgment is proper, we must review the record before the trial court at the time Continental moved for summary judgment.  Civ. R. 56(C).  If the record at the time of the motion for summary judgment does not contain evidence creating a genuine issue of material fact, denial of summary judgment is improper.  Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095.  In this case, the record contained no evidence that Sonner had permission to use the van for personal purposes and did contain evidence that his use of the van constituted a gross deviation from the scope of permission initially granted by Whittington.  Consequently, the record did not raise a genuine issue of material fact and denial of summary judgment was improper.

The holding of the majority creates a new rule that appellate review of a denial of summary judgment is precluded once the case has gone to trial.  This rule is in outright conflict with our decision in Balson v. Dodds (1980), 62 Ohio St.2d 287, 16 O.O. 3d 329, 405 N.E.2d 293, paragraph one of the syllabus, where we held that "[a] trial court's denial of a motion for summary judgment is reviewable on appeal by the movant from a subsequent adverse final judgment."  The court in that case reasoned that if the denial of a motion for summary judgment is nonreviewable when the cause has subsequently gone to trial, the appellant "would be required to choose either trial on the merits without preserving for appellate review the trial court's alleged error on summary judgment or immediate appellate review of the trial court's alleged error on summary judgment without preserving [the] right to trial on the merits."  (Emphasis sic.)  Id. at 289, 16 O.O.3d at 330, 405 N.E.2d at 295.  The court concluded that such a scheme would "inhibit effective and consistent appellate court scrutiny of trial court compliance with pre-trial procedure.  To avoid such difficulties, appellant should be permitted to try [the] case on the merits and still preserve for appellate review the trial court's alleged error on summary judgment."  Id. at 289, 16 O.O.3d at 331, 405 N.E.2d at 295.  This is rock solid law and

should not be tampered with.

The majority states, "[w]e recognize that our decision today might be cited as having some impact on the case of Balson v. Dodds." (Emphasis added.) The holding of the majority has more than "some impact" on Balson. It overrules the holding in its entirety, thereby confronting head-on the problem created by precluding review of the denial of summary judgment -- inhibiting effective and consistent appellate court scrutiny of trial court compliance with pretrial procedure.

The majority states that under Civ. R. 61, even if the trial court erred in denying Continental's motion for summary judgment, that error did not rise to the level of reversible error because the ensuing trial supported a judgment in favor of the defendants. Such reasoning flies in the face of the policy announced in Balson, supra. The ruling of the trial court could not be considered "harmless error" as proposed by the majority because the court's error greatly affected the substantial rights of the parties. The majority is essentially rewriting a contract between the parties by extending coverage far beyond the contemplation of the parties when they formed the contract.

Whittington could not have been more clear when he gave Sonner instructions concerning the use of the company van. He told Sonner to take the other workers to their homes, and then to "take [the van] home and leave it there and pick the guys up tomorrow morning and go to the farm." After Sonner took the co-workers to their homes, he drove the company van to a friend's home. While at his friend's home, Sonner, who was only eighteen years old at the time, drank five beers in less than two hours. After drinking the beers, Sonner decided to drive his friends to Piqua, Ohio. Although Sonner was aware of the fact that company policy prohibited the use of alcohol in its vans, Sonner permitted his friends to bring beer in the van with them. This is clearly a "frolic and detour" if I ever saw one.

Sonner admitted in his deposition that his use of the van on the night of the accident exceeded the permission given to him by Whittington. He also admitted that he was not authorized to drive the van for personal use, and that this personal use had absolutely nothing to do with his employment at Whittington Produce.4 When he testified at trial, Sonner changed his statement to better comport with the defendants' position. This testimony was not part of the record at the time Continental moved for summary judgment and therefore cannot be considered when reviewing the merits of the motion. Even though he changed some of his testimony at trial, Sonner still admitted that the use of the van on the night of the accident was personal, that he was not using the van for any reason for which Whittington had given him permission, and that he did not have permission to drive the van for personal purposes.

The issue before the trial court was whether Sonner was an "insured" under the insurance policy provided to Whittington Produce by Continental Insurance. "Insured" is defined in the policy as follows:

"a. You [Whittington Produce] for any covered 'auto'.

"b. Anyone else while using with your permission a covered 'auto' ***."  (Emphasis added.)

It is clear from his deposition that Sonner did not have the permission of Whittington to use the company van for personal reasons and that his use of the van at the time of the accident greatly exceeded the scope of permission, whether express or implied, granted by Whittington. Furthermore, there is no indication from the depositions of Thomas Sonner, Lewis Hawes, or Terry Whittington that Sean Sonner had permission, express or implied, to use the company van for personal purposes or that there was a company policy, express or implied, which permitted the personal use of company vehicles. Accordingly, no genuine issue of material fact existed that could justify the denial of summary judgment in favor of Continental.

The majority professes that it has declined the invitation of appellants and amicus to adopt the "initial permission" rule, which we rejected in Gulla v. Reynolds (1949), 151 Ohio St. 147, 39 O.O. 2, 85 N.E.2d 116, and its progeny.  However, by refusing to view Sonner's irresponsible actions as anything but a gross deviation, the majority seems to be applying the initial permission rule.  The reason we rejected this rule was because it "obviously lends itself to gross abuse by an unscrupulous individual who, in violation of his express instructions, might retain possession of the automobile indefinitely and operate it over unlimited territory with the insurance still in effect."  Id. at 154, 39 O.O. at 5, 85 N.E.2d at 120.  This is precisely what Sean Sonner did when he disregarded the express instructions of his employer by picking up some friends, drinking alcoholic beverages, and driving miles away from his home.  Because Whittington did not explicitly state "do not get drunk and drive your friends around town," the majority feels he is deemed to have given implied permission for Sonner to do just that.  This simply does not follow.  How the majority can view Sonner's actions as anything but a gross deviation from the scope of permission granted astounds me.  The more the majority tries to explain it, the less one can understand it.

For the above-mentioned reasons, I respectfully dissent.

FOOTNOTE:

1  At his deposition, Sonner testified as follows:

"Q: At the time you had the accident on July 5, 1989 were you using the van for any reason associated with your work at Whittington Produce?

"A: No.

"Q: Were you using the van for any reason that Terry Whittington had given you permission to use the van?

"A: No.

"Q: At the time of the accident on July 5, 1989 did you realize you were exceeding the scope of the permission Mr. Whittington had given you?

"A: Yeah."

Sonner further testified as follows:

"Q: Those verbal instructions were to drop the guys off, leave the van at your house and to pick them up the next morning, is that right?

"A: Yeah.

"Q: Did Mr. Whittington ever authorize your use of the van for personal use?

"A: No.

"Q: And your use of the van on the evening of July 5, 1989 was for personal use?

"A: Yes.

"Q: It had nothing to do with your employment at Whittington Produce?

"A: Nope."