OPINION
{¶ 1} The Board of Trustees of Union Township appeals from a judgment rendered against it in litigation stemming from a public improvement construction contract. The Township contends that the trial court should have granted its motions for judgment on the pleadings, summary judgment, judgment notwithstanding the verdict and for a new trial. The Township also contends that the trial court erred with regard to the issue of prejudgment interest.
 {¶ 2} The contractor, J J Schlaegel, Inc., has cross-appealed. Schlaegel contends that the trial court erred by granting the motion for judgment on the pleadings filed by Fereidoun Shokouhi, the Champaign County Engineer, and by dismissing the engineer from the litigation. Schlaegel further contends that the jury erred with regard to its calculations of damages, and that the trial court erred with regard to the issue of prejudgment and post-judgment interest.
 {¶ 3} We conclude that the trial court erred by failing to render judgment on the pleadings in favor of the Township with regard to Schlaegel's claims against it. However, we conclude that it did not err by denying the motions for judgment on the pleadings and summary judgment with regard to the Township's counterclaim against Schlaegel. Instead, we conclude that the Township has raised an issue of fact with regard to its counterclaim which must be resolved via hearing or new trial. Finally, we conclude that, given the error in denying the motion for judgment on the pleadings, the trial court erred by assessing interest against the Township.
 {¶ 4} On the matter of the cross-appeal, we find that the trial court did not err by dismissing the county engineer from the action. We further find that all issues regarding damage and interest calculations have been rendered moot.
 {¶ 5} Accordingly, the judgment is reversed, in part, and this cause is remanded for further proceedings in accordance with this opinion.
 I {¶ 6} The Board of Trustees of Union Township entered into a construction contract with J J Schlaegel, Inc., for the improvement of a portion of South Ludlow Road located within the Township. The improvement consisted of the relocation and reconstruction of a curved section of the road, as well as construction of shoulders and drainage ditches on the portions of the road to the north and south of the curve.
 {¶ 7} The contract between the parties provided, in part, that the Township would pay Schlaegel the "approximate sum of $361,897.62." The contract went on to state that "the actual sum to be paid, however, will be the aggregate total determined by the work actually performed by Schlaegel, calculated upon the unit price set out in" Schlaegel's bid form. Of particular relevance to this appeal are Sections Two and Three of the contract specifications, which state as follows:
 {¶ 8} "2. Roadway Excavation including Embankment: Shall be in accordance with item 203 and to the lines and grades shown on the plans. All surplus and/or unsuitable excavated material shall be disposed of in accordance with 203.05 or as directed by the Township. Also consists of the removal and satisfactory disposal of the pavement to the line and grade shown on the plan and in accordance with item 303. Payment shall be at the contract price per cubic yard for roadway excavation.
 {¶ 9} "3. Linear Grading: Shall be in accordance with item 203 and to the lines and grades shown on the plan. This shall include the needed embankment construction. Payment shall be the contract price per station graded along each side of the pavement."
 {¶ 10} The parties agree that Section Two of the Specifications pertains to the curved portion of the project, while Section Three pertains to the remainder of the project. They also agree that the references to "item 203" in the Specifications relate to the State of Ohio, Department of Transportation Manual on Construction and Material Specifications, a copy of which is included in the record.
 {¶ 11} The following provisions of that publication, relevant to this matter, are set forth below:
 {¶ 12} "ITEM 203 ROADWAY EXCAVATION AND EMBANKMENT
 {¶ 13} "203.01 Description. This work shall consist of preparation of areas upon which embankments are to be placed; excavation for the roadway and channel, including the removal of all material encountered not being removed under some other item; constructing embankments with the excavated material and material from other sources necessary to complete the planned embankments; furnishing and incorporating all water required for compacting embankment and subgrade; disposing of unsuitable and surplus material; preparing the subgrade; testing the stability and uniformity of compaction of the subgrade for areas specifically called for on the plans; finishing shoulders, slopes and ditches; all in accordance with these specifications and in reasonably close conformity with the lines, grades, thicknesses and cross sections shown on the plans. All excavation shall be considered as unclassified.
 {¶ 14} "* * *
 {¶ 15} "Where embankment is not a separate pay item, payment for roadway excavation shall be made under 203 Excavation Including Embankment Construction, which shall include payment for placing suitable excavated material in embankment. If borrow is needed to complete planned embankments, it shall be measured and paid for separately under 203 Borrow.
 {¶ 16} "* * *
 {¶ 17} "203.02 * * * Borrow. Material obtained from approved sources, outside the right-of-way, required for the construction of embankments or for other portions of the work.
 {¶ 18} "203.04 * * * (g) Linear Grading. This work shall include all labor and equipment necessary to produce typical sections and profile grades as detailed in the plans. This shall include embankment construction if embankment area is with 1 km (½ mile) of material source. If additional material is required to obtain conformance to plan specified grades, and if it is required at a distance of more than 1 km (½ mile) from material source, then it shall be measured and paid for separately under 203 Borrow.
 {¶ 19} "203.15 * * * (d) Measurement of Embankments. Where the contract does not specifically provide for payment for embankment, the work of embankment construction will not be paid as such, but will be considered incidental to the various items of excavation."
 {¶ 20} Finally, the contract contained an eleven-page set of plans, which included an aerial view of the project, as well as drawings and elevation information.
 {¶ 21} The project was commenced in July of 2000. On September 13, 2000, the Township provided Schlaegel with a document that was prepared prior to entering into the contract, which is identified in the record as "Plaintiff's Exhibit Four." That document contains calculations regarding the cubic yards to be excavated as well as the cubic yards of material needed for the embankment specified in Section Two, Excavation with Embankment, in the contract specifications. According to the document, the Township estimated that 10,696.16 cubic yards of material would be excavated from the curved section of the road and that the embankment in that area would require the use of 14,061 cubic yards of material.
 {¶ 22} The construction was completed on October 25, 2000, twenty-three days after the agreed completion date. Pursuant to the terms of the contract, the Township was permitted to assess liquidated damages in the sum of three hundred dollars per day for every day that the project went over schedule. Thus, the Township assessed the sum of $6,900 as liquidated damages for the failure to complete the project on time. With regard to Section Two, Excavation with Embankment portion of the project, Schlaegel was paid the sum of $57,654.20. This amount was based upon Schlaegel's bid price of $4.10 per cubic yard, multiplied by 14,062 cubic yards. However, the record shows that Schlaegel only excavated 9,892 cubic yards in that portion of the project.
 {¶ 23} Schlaegel filed suit against the Township for breach of contract. Specifically, the complaint sought damages against the Township for its "failure to pay for the additional 3,506 cubic yards of embankment needed by [Schlaegel] to build the embankment" and "the Township's failure to pay for the additional 4,170 cubic yards of material beyond that called for in the plans which [Schlaegel] was required to move in order to build the embankment." The complaint also sought reimbursement from the Township for the liquidated damages, which Schlaegel claims were improperly assessed. Finally, the complaint against the Township sought reimbursement for monies billed by a local utility as a result of Schlaegel's cutting of the utility's service line.
 {¶ 24} The complaint also included claims against Fereidoun Shokouhi, the Champaign County Engineer, in his official capacity. The claims against Shokouhi were based upon allegations of negligence with regard to the project plans and supervision.
 {¶ 25} The Township filed a counterclaim, in which it claimed that it was entitled to remuneration for the amount it had allegedly overpaid Schlaegel with regard to the Excavation with Embankment portion of the contract.
 {¶ 26} This cause was tried to a jury in June, 2005. Jeffrey Schlaegel testified that when he bid the project, he assumed that the Section Two, Excavation with Embankment portion of the construction would be a "balance job." In other words, he explained that he assumed that the amount of material excavated in that portion would be almost equal to the amount of material needed to complete the embankment. He further testified that the plans for the project were "deceiving" because the project appeared to be a balance job when it was not. He also testified that the plans were deceiving because the contract did not set forth all of the language contained in Section 203 of the Department of Transportation Construction Manual.
 {¶ 27} Schlaegel further testified that, prior to preparing a bid, he drove along the project site to inspect it visually. He further testified that he did not have a survey of the project performed prior to preparing his bid because he did not want the expense and because he assumed that the Township's information was correct. Schlaegel testified that he did not prepare his bid until the night before the bids were due, and that he did not look at the plans until that time. He admitted that had he wanted, he could have asked for more information prior to bidding, but that he did not do so due to his own time constraints. He further admitted that he bid the project "low" because he wanted the contract, since the project was located in his home county.
 {¶ 28} According to Schlaegel, he knew that the document identified as Plaintiff's Exhibit Four was "out there," but also stated that the information on the document was "kept from bidders." As support for this statement, he testified that he "felt" that the Township hid the document from bidders. He testified that had he seen the document prior to bidding, he would have made a bid that was approximately $300,000 higher.
 {¶ 29} Schlaegel admitted that the plans showed the difference in elevation between the road and the surrounding land, and that this indicated approximately how deep to make excavations and how high to build the embankments. He testified that the plans only showed this information at every one-hundred-foot interval, but that it should have shown it for every twenty-five-foot interval. However, he admitted that the super elevation chart contained in the plans showed the information for every twenty-five foot section.
 {¶ 30} Schlaegel testified that his company had to do extra work in the linear grading portion of the project and that "just about all [of the excavation material from the linear grading portion of the project went] into the embankment" for the curved section of the road.
 {¶ 31} The Township presented the testimony of Shokouhi and Robert Harmison. Harmison was the survey crew chief for the county and was present at the project site during construction. Of relevance to this appeal, Harmison testified that the amounts set forth on the document identified as Plaintiff's Exhibit Four were taken directly from the numbers set forth on the plans. This testimony was unrebutted.
 {¶ 32} Following trial, the jury returned a general verdict in Schlaegel's favor in the amount of $29,687.70. The jury's response to jury interrogatories shows that the jury found that Schlaegel had done 3,876 cubic yards of additional excavation in the linear grading portion of the project and that Schlaegel had done 3,365 cubic yards of additional embankment in the curved section of the project. The jury then multiplied these additional amounts by Schlaegel's bid price of four dollars and ten cents. The jury declined to award Schlaegel any damages on its claim for reimbursement of liquidated damages. The jury also found against the township on its counterclaims.
 {¶ 33} Schlaegel sought an award of prejudgment interest, but that issue was continued pending briefing by the parties. The parties filed briefs regarding interest. Additionally, the township filed a motion for judgment notwithstanding the verdict and for a new trial. The trial court denied the motions and entered an order awarding prejudgment interest to Schlaegel in the sum of $11,397.88.
 {¶ 34} The township appeals from the judgment against it, including the award of interest and the trial court's denial of its motion for new trial and for judgment notwithstanding the verdict, as well as the denial of its motion for summary judgment. Schlaegel cross-appeals from the trial court's decision dismissing its claims against Shokouhi. Schlaegel also appeals from the trial court's decision regarding prejudgment and post-judgment interest and the jury's calculations of damages.
 II {¶ 35} The Township's First Assignment of Error is as follows:
 {¶ 36} "THE TRIAL COURT ERRED WHEN IT DID NOT AWARD THE BOARD JUDGMENT ON THE PLEADINGS."
 {¶ 37} The township contends that the trial court erred by denying its motion for judgment on the pleadings. We agree.
 {¶ 38} "A Civ.R. 12(C) motion for judgment on the pleadings presents only questions of law." Anderson v. Interface Electric,Inc., Franklin App. No. 03AP-354, 2003-Ohio-7031, ¶ 10, citation omitted. Under this rule, dismissal is appropriate when the plaintiff can prove no set of facts entitling him to relief. Id. When considering a defendant's motion for judgment on the pleadings, pursuant to Civ.R. 12(C), the trial court must construe as true all material allegations in the complaint, together with all reasonable inferences to be drawn therefrom.Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 165-166. The trial court is restricted solely to the allegations of the pleadings in determining the motion. Id. at 166. However, an exception does exist to permit consideration of documents attached to, and incorporated into, pleadings. See Civ.R. 10(C). The trial court's decision to grant or deny a motion for judgment on the pleadings is reviewed on a de novo basis. Citicasters Co.v. Bricker Eckler, L.L.P., 149 Ohio App.3d 705,2002-Ohio-5814, ¶ 5.
 {¶ 39} With this standard in mind, we now turn to the crux of this argument: whether Schlaegel's complaint, with attached contract, presents facts upon which the trial court could find it entitled to damages for breach of contract.
 {¶ 40} Schlaegel's complaint sets forth allegations that the Township breached the contract by failing to pay Schlaegel for additional embankment work, including moving additional material to build the embankment, and that the Township breached the contract by assessing liquidated damages for late completion.
 {¶ 41} We begin by citing the factual averments made in support of the claims regarding the additional work. The complaint includes an averment that the estimated amounts of materials set forth in the contract were incorrect. Schlaegel's complaint avers that the construction plans "called for 14,062 cubic yards [of material] for the embankment part of the excavation/embankment portion of the project and an excavation amount [from the curved portion of the project] of 10,696.16 cubic yards." The complaint further avers that the actual amount needed for the embankment was 17,568 cubic yards and that only 9,892 cubic yards was obtained from the excavation of the curved portion. The complaint avers that the difference of 7,676 cubic yards of material had to be obtained from the linear grading portion of the project. Significantly, the complaint also admits that Schlaegel anticipated that any material needed to complete the embankment would be obtained from the linear grading portion of the project.
 {¶ 42} The complaint then alleges that the county engineer's office improperly set the construction stakes in places not consistent with the construction plans. The complaint goes on to claim that the improper staking "result[ed] in an amount of 4,170 cubic yards which had to be moved by [Schlaegel] beyond the quantities called for in the plans." Finally, the complaint avers that the county engineer refused to revise the contract to account for the additional 4,170 cubic yards of material and that the Township improperly refused to pay for this additional work. There is no allegation in the complaint that the plans were intentionally deceiving or that the improper staking was intentional.
 {¶ 43} The complaint sets forth claims of breach of contract based upon the theory that Schlaegel was forced to perform more work than anticipated because the Township provided incorrect estimates of material amounts and because the engineer incorrectly set the construction stakes.
 {¶ 44} In order to determine whether the contract entitled Schlaegel to payment for the additional work, as alleged in the complaint, we must analyze the terms of the contract. In doing so, we remain cognizant of the rules of contract interpretation and note that it is generally presumed that the intent of the parties to a contract is reflected in the language they choose to employ in the agreement. Shifrin v. Forest City Enterprises,Inc. (1992), 64 Ohio St.3d 635. Only when the language of a contract is unclear or ambiguous will extrinsic evidence be considered in an effort to give effect to the parties' intentions. Id. A breach of contract is defined as the failure, without legal excuse, to perform any promise that forms a whole or part of the contract. National City Bk. Of Cleveland v.Erskine Sons (1953), 158 Ohio St. 450, paragraph one of syllabus.
 {¶ 45} We first note that we find the contract clear and unambiguous. Under the general terms of the contract, the parties agreed that Schlaegel would be paid for work actually performed at the bid price of four dollars and ten cents per unit of work performed. With regard to the curved portion of the road, as described in Section Two, Excavation with Embankment, the contract specifically provides that "payment shall be at the contract price per cubic yard for roadway excavation." The contract does not include payment based upon the amount of embankment. Thus, pursuant to the terms of the contract, Schlaegel was entitled to payment based solely upon the amount of material excavated in the curved section, as described in Section Two of the contract specifications and as set forth on the plans.
 {¶ 46} This result is supported by a reading of Section 203 of the Department of Transportation Construction Manual, which was incorporated into the contract. Those provisions, as set forth above, provide that roadway excavation and embankment "shall consist" of excavation and the construction of embankments with "the excavated material and material from other sources necessary." Id. at § 203.01. When embankment is not set forth as a separate item for payment — as is the case here — any embankment will be included in the payment for excavation, unless the material for embankment has to be borrowed from outside the project. The material in this case, as Schlaegel concedes, was obtained from the linear grading portion of the project. Indeed, pursuant to the Manual, when the contract does not set forth embankment work as a specific pay item, the work of embankment construction is considered as "incidental" to the excavation. Id. at § 203.15(d).
 {¶ 47} We next turn to the allegations set forth in the complaint and address Schlaegel's contention that the breach resulted from the fact that the contract set forth estimates that varied from the amounts actually encountered on the project. We note that the contract price was described in the agreement as "approximate," and was anticipated as being dictated by the amount of work that Schlaegel actually performed, as opposed to the work estimated to be performed. Furthermore, under the general conditions of the contract, the quantities listed by the Township were delineated as estimates only, not actual amounts. It is clear that under the terms of the contract the estimates were clearly just that — estimated, rather than actual, amounts of materials and work to be performed. Furthermore, the excavation work, in actuality, required less work than originally estimated. Therefore, the claim that there was more work to be performed than was estimated, and that this variance constituted a breach of contract, lacks merit.
 {¶ 48} Next, we turn to Schlaegel's claim that the county engineer's improper staking of the job site resulted in a breach of contract because it caused Schlaegel to perform more work than anticipated. Section Two of the specifications states that the work on the curved portion of the roadway "shall be [done] to the lines and grades shown on the plans." There is nothing in the contract to indicate that the stakes constituted a superseding boundary of construction. Thus, Schlaegel could not reasonably have relied upon the placement of the stakes.
 {¶ 49} Schlaegel cites Continental Ins. Co. v. Whittington
(1994), 71 Ohio St. 3d 150, for the proposition that even if the Township had been entitled to judgment on the pleadings, the error of the trial court in having failed to grant the Township's motion for judgment on the pleadings is rendered moot because the matter proceeded to trial, and the jury found in its favor. We disagree.
 {¶ 50} In Whittington, the court stated that "any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." Id. at syllabus. That holding is based upon the conclusion that "a full and complete development of the facts at trial (as opposed to the limited factual evidence elicited upon discovery) showed that the [non-moving party was] entitled to judgment." Id., at 156. Here, a complete review of the record reveals no other facts developed at trial that would entitle Schlaegel to judgment based upon a breach of contract claim. More importantly, Continental is expressly limited to cases involving questions of fact, as opposed to cases involving pure questions of law, like the issue herein. Id., at 159.
 {¶ 51} We note that at the conclusion of trial, Schlaegel was permitted an instruction to the jury on additional claims not contained in the complaint. Specifically, the jury was instructed that it could assess damages incurred by reason of performing additional linear grading beyond that provided for in Section Three of the contract specifications. Further, the jury was instructed on a claim of "concealment." We cannot determine the basis for these instructions, since the record does not indicate that Schlaegel asked to amend its complaint. In any event, we conclude that these claims fail as well.
 {¶ 52} First, as stated above, the Township was entitled to judgment on the pleadings, so that the matter should not have proceeded to trial. Second, the claim of concealment, which is based in part upon the argument that the contract appeared to be a "balance job," is not supported by anything other than Jeffrey Schlaegel's conclusory allegations. The contract contains no language to indicate that it was a balance job. The claim of concealment based upon the failure to provide Schlaegel with a copy of the document identified as Plaintiff's Exhibit Four also fails, because the undisputed testimony indicates that the document was created from the numbers contained in the actual plans, which Schlaegel had prior to bidding. Schlaegel does not contend that the numbers set forth on the plans are incorrect. Finally, the claim for additional linear grading lacks merit. This claim is based upon the allegation that, in order to complete the embankment in the curved portion of the project, Schlaegel was required to perform additional linear grading solely for the purpose of obtaining the 4,170 cubic yards of material beyond that excavated in that part of the job. Again, we note that the contract indicates that this embankment was incidental to the excavation in that area, and that it was to be paid for as part of the excavation, rather than as a separate pay item. Also, the contract clearly stated that this portion of the project consisted of obtaining all material necessary for completion of the embankment.
 {¶ 53} We finally address the Township's argument that it was entitled to judgment on the pleadings with regard to its counterclaim. While it would appear that the Township is entitled to repayment of any monies it overpaid to Schlaegel with regard to Section Two, Excavation with Embankment, we note that the Township's pleadings indicate that issues of fact remain with regard to the amount to be repaid. Thus, the Township essentially raised issues of fact that are not capable of determination on a motion for judgment on the pleadings. Therefore, although we base our conclusion on different grounds, we conclude that the trial court did not err when it denied the motion with regard to the counterclaim.
 {¶ 54} The Township's First Assignment of Error is sustained in part, and overruled in part.
 III {¶ 55} The Township's Second Assignment of Error is as follows:
 {¶ 56} "THE TRIAL COURT ERRED WHEN IT DID NOT AWARD THE BOARD SUMMARY JUDGMENT."
 {¶ 57} The Township contends that the trial court erred when it denied its motion for summary judgment. The Township filed a motion for summary judgment seeking judgment against Schlaegel with regard to the Township's counterclaim, as well as upon Schlaegel's claim for breach of contract. Since we have disposed of the claims for breach of contract, in Part II, above, we need only address this argument with regard to the Township's counterclaim.
 {¶ 58} As noted above, the Township's counterclaim and motions for judgment indicate that there are issues of fact surrounding the questions of whether it is entitled to repayment, and if so, the amount owed. Specifically, the Township set forth two separate theories with regard to the amount owed, and also indicated that there existed a question whether Schlaegel was entitled to raise the issue of reasonable reliance with regard to those amounts. Thus, we conclude that the Township's own pleadings raised a genuine issue of material fact with regard to the motion. Therefore, we conclude that the trial court did not err in overruling the motion. We further conclude that all issues regarding the Township's counterclaim should be remanded to the trial court for further proceedings.
 {¶ 59} The Second Assignment of Error is overruled.
 IV {¶ 60} The Township's Third Assignment of Error is:
 {¶ 61} "THE TRIAL COURT ERRED WHEN IT DENIED THE BOARD'S MOTION FOR JNOV OR, IN THE ALTERNATIVE, FOR A NEW TRIAL."
 {¶ 62} The Township contends that even if the trial court were correct in denying its motion for judgment on the pleadings, it should have granted its judgment notwithstanding the verdict or for new trial.
 {¶ 63} We need not address this assignment of error, since it is rendered moot by our disposition of the Township's First and Second Assignments of Error in Parts II and III, above. Accordingly, the Third Assignment of Error is overruled as moot.
 V {¶ 64} The Township's Fourth Assignment of Error is:
 {¶ 65} "THE TRIAL COURT ERRED WHEN IT AWARDED SCHLAEGEL PRE-JUDGMENT INTEREST FROM JANUARY 18, 2001."
 {¶ 66} The Township contends that the trial court erred in determining the date on which pre-judgment interest began to accrue. Again, this assignment of error is rendered moot by our finding that the trial court should have granted the Township's motion for judgment on the pleadings and by the fact that Schlaegel was not entitled to damages based upon claims of breach of contract or concealment. The Fourth Assignment of Error is overruled as moot.
 VI {¶ 67} Schlaegel's First Assignment of Error (in its cross-appeal) is as follows:
 {¶ 68} "THE TRIAL COURT ERRED IN GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS TO THE COUNTY ENGINEER ON THE BASIS OF POLITICAL SUBDIVISION IMMUNITY UNDER R.C. CHAPTER 2744."
 {¶ 69} Schlaegel contends that the trial court should not have granted Shokouhi's motion for judgment on the pleadings and that Shokouhi should not have been dismissed from the action. Shokouhi contends that he was entitled to judgment, based upon his argument that he is protected by the immunity provided under the terms of the Political Subdivision Tort Liability Act, R.C. Chapter 2744.
 {¶ 70} R.C. 2744.02(A)(1) provides that a political subdivision is "not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." The planning, design and reconstruction of a public improvement is a governmental function. R.C.2744.01(C)(2)(l). Additionally, the maintenance and repair of roads in considered a governmental function. R.C.2744.01(C)(2)(e).
 {¶ 71} Schlaegel acknowledges that Shokouhi was sued only in his official capacity as county engineer. Thus, Schlaegel was, essentially, suing the political subdivision of Champaign County. Shokouhi, and his assistants, were responsible for the planning and design of the reconstruction and repair of the road project, which is classified as a governmental function. All of the allegations contained in Schlaegel's complaint sound in negligence. Thus, pursuant to R.C. 2744.02(A), Shokouhi and the County are immune from suit.
 {¶ 72} We note that there are exceptions to this immunity, as set forth in R.C. 2744.02(B). However, Schlaegel does not allege that any of those exceptions are applicable. Therefore, we conclude that Shokouhi and Champaign County are entitled to immunity with regard to Schlaegel's claims against them, and that the trial court did not err in granting Shokouhi's motion for judgment on the pleadings.
 {¶ 73} Schlaegel's First Assignment of Error is overruled.
 VII {¶ 74} Schlaegel's Second, Third, Fourth, Fifth and Sixth Assignments of Error are as follows:
 {¶ 75} "THE CUBIC YARD FIGURES BY THE JURY AS THE BASIS FOR ITS CALCULATIONS OF DAMAGES ARE TOO LOW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 76} "THE UNIT PRICE FIGURE OF $4.10 USED BY THE JURY AS THE BASIS FOR ITS CALCULATIONS OF DAMAGES IS TOO LOW AND AGAINST
THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 77} "THE FAILURE OF THE JURY TO AWARD DAMAGES BASED ON UNION TOWNSHIP'S IMPROPER IMPOSITION OF LIQUIDATED DAMAGES AND FOR ADDITIONAL EXPENSES DUE TO DELAYS ATTRIBUTABLE TO THE TOWNSHIP IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 78} "THE TRIAL COURT ERRED IN APPLYING THE LOWER INTEREST RESULTING FROM THE AMENDMENT TO R.C. 1343.03 TO CALCULATE THE AMOUNT OF PREJUDGMENT AND POST JUDGMENT INTEREST AWARDED TO PLAINTIFF IN THIS CASE.
 {¶ 79} "THE TRIAL COURT ERRED IN NOT CALCULATING PREJUDGMENT AND POST JUDGMENT INTEREST USING COMPOUND INTEREST."
 {¶ 80} Schlaegel contends that the jury erred with regard to its calculation of damages and that the trial court erred with regard to its calculation of interest. We need not address these arguments as they are rendered moot by our disposition of the Township's First Assignment of Error, in Part II above.
 VIII {¶ 81} The Township's First Assignment of Error having been sustained, in part, and overruled, in part, the judgment of the trial court is Reversed, in part, and this cause is Remanded for further proceedings with regard to the Township's counterclaim against Schlaegel. All of Schlaegel's assignments of error are overruled. The judgment in favor of Champaign County Engineer Fereidoun Shokouhi is Affirmed.
Brogan and Wolff, JJ., concur.